[Crim. No. 18311. First Dist., Div. Four. Sept. 13, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL LOUIS BLACK, Defendant and Appellant.

848

## COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State Public Defender, Peter R. Silten and Thomas N. Griffin, Deputy State Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson, Jr., Ann K. Jensen and Morris Lenk, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CALDECOTT, P. J.**—By information Michael Louis Black (appellant) was charged with violation of Penal Code section 187 (murder; count one) and section 12021 (possession of a firearm by a previously convicted felon; count two). It was alleged that appellant used a firearm in the commission of the offense within the meaning of Penal Code sections 12022.5 and 1203.06, subdivision (a)(1). It was further alleged that appellant had previously been convicted of a felony in violation of Health and Safety Code section 11377 (possession of dangerous drugs).

Appellant was convicted of voluntary manslaughter and of possession of a firearm by a felon. The jury further found that appellant used a firearm in the commission of the offense of voluntary manslaughter. The appeal is from the judgment.

Appellant and one Otis Zackery (hereinafter Zackery) engaged in a fight in a parking lot. Testimony from eyewitnesses reveals the following: During the scuffle, appellant was seen holding onto Zackery's shirt collar as Zackery tried to free himself. Appellant was heard to say "You shouldn't have done it," while Zackery was heard to say, "leave me alone, let me go." One eyewitness observed a shiny object in appellant's hands and identified it as a concealable weapon. Another eyewitness described it as a chrome and silver pistol.

Although no eyewitness testified that he or she actually saw appellant shoot Zackery, all heard two or three gunshots. Zackery stumbled and fell upon a security maintenance guard who was entering the parking lot. Appellant fled.

The guard testified that Zackery said, "help me, I don't want to die. I've been shot." The guard asked Zackery who shot him and he replied, "Michael Black."

Officer Christopher Croul arrived at the scene of the shooting shortly thereafter and asked Zackery what had happened. Zackery responded, "please don't let me die; Michael Black shot me; he shot me with a zip gun or something." Zackery then explained the events which preceded the shooting. Appellant approached him in the parking lot and said, "you're the one who jumped me and hit me." Zackery believed appellant was referring to a fight he had with appellant several months earlier. Zackery backed away from appellant who then pulled out a gun and pointed it at Zackery. Two or three shots were fired; Zackery was hit twice. Zackery was then taken to the hospital and died shortly thereafter as a result of a gunshot wound which passed through the aorta.

Appellant took the witness stand on his own behalf and testified as follows: Zackery approached appellant in the parking lot and said he was going to get appellant for hitting his sister. Zackery then hit appellant across the side of his face and fighting ensued. Appellant saw Zackery produce a small, chrome gun. As they continued to fight, appellant gained possession of the gun. When Zackery attempted to retrieve the gun, it discharged twice. Both men fell to the pavement. Appellant got up, ran from the parking lot and threw the gun in a dumpster.

Substantial evidence was introduced which demonstrated that Zackery had a history of mental illness. In fact, on the day of the shooting, Zackery had just been released from Napa State Hospital. Zackery was

described as having a tendency toward violent behavior in 1974. Two other witnesses described Zackery as gravely disabled and a danger to others. Yet, one expert witness noted that Zackery's disease had gone into remission by October 1977 and he was no longer a danger to others. There was other testimony which revealed certain instances in which Zackery provoked violent confrontations.

I

Appellant argues that Zackery's statements, "I don't want to die," or "please don't let me die," to Officer Croul do not establish that Zackery was acting under a sense of immediately impending death. They simply reveal that Zackery wanted medical help and comfort.

Evidence Code section 1242 provides that: "Evidence of a statement made by a dying person respecting the cause and circumstances of his death is not made inadmissible by the hearsay rule if the statement was made upon his personal knowledge and under a sense of immediately impending death." ■ "In determining the frame of mind of the declarant regarding his belief with respect to impending death, the court may consider his physical condition, the nature and seriousness of his wounds, his knowledge of his grave condition, his conduct, language and statements." (*People* v. *Pollock* (1939) 31 Cal.App.2d 747, 755 [89 P.2d 128].) It is not required that the declarant expressly proclaim he or she is going to die. (*People* v. *Wilson* (1942) 54 Cal.App.2d 434, 443 [129 P.2d 149].)

Officer Croul testified that when he arrived at the scene of the shooting, he saw Zackery on the ground. Zackery appeared frightened and his first words to Officer Croul were either, "please don't let me die" or "I don't want to die." Officer Croul then asked Zackery what had happened and throughout his explanation, Zackery kept begging Officer Croul not to let him die. Zackery was suffering from two gunshot wounds causing such damage that without treatment, Zackery had no more than three hours to live.

■ At the time Zackery made his statements in question, he was dying. Furthermore, it is apparent that Zackery had knowledge of his critical condition which prompted him to plea emotionally to Officer Croul not to let him die. Whether Zackery thought he was recovering at the time he was in the hospital, as appellant contends, does not affect the veracity of his statement made while under the sense of impending death.

(*People* v. *Cord* (1910) 157 Cal. 562 [108 P. 511].) The evidence sufficiently establishes that the trial court did not abuse its discretion in admitting Zackery's explanation of the events preceding the shooting.

## II

■ The court must charge the jury on any points of law pertinent to the issue, if requested by either party. (Pen. Code, § 1093, subd. 6.) If the defendant has requested instructions on a lesser included offense and there is evidence from which a reasonable inference could be drawn that the defendant may be guilty of a crime of a lesser degree, the court may not confine the instructions to the crime charged. (*People* v. *Carmen* (1951) 36 Cal.2d 768, 773 [228 P.2d 281].)

■ Where the defendant fails to request instructions on material issues, the court is under a duty to give *sua sponte* instructions but only on the general principles of law pertinent to the case. (*People* v. *Heddens* (1936) 12 Cal.App.2d 245, 247 [55 P.2d 230].)

In the case at bench, appellant requested a specific instruction on the lesser included offense of voluntary manslaughter and it was given. Appellant also requested that CALJIC No. 3.31 ("Concurrence of Act and Specific Intent") and CALJIC No. 2.02 ("Sufficiency of Circumstantial Evidence to Prove Specific Intent") be given and they were but only with regard to the charged crime. Appellant did not request that such instructions be given to include the lesser offense, and now contends the court committed prejudicial error for failing to give *sua sponte* CALJIC No. 3.31 and CALJIC No. 2.02 with regard to voluntary manslaughter.

■ Under the circumstances of this case, the court was under no duty to give *sua sponte* CALJIC No. 3.31 and CALJIC No. 2.02 as to voluntary manslaughter. The jury was adequately instructed that the crime of voluntary manslaughter requires specific intent. CALJIC No. 8.40, which appellant requested, and the court gave, states in part: "Voluntary manslaughter is the intentional and unlawful killing of a human being without malice aforethought." The jury was further instructed as to the crime of involuntary manslaughter and its absence of a specific intent requirement. By referring to voluntary manslaughter in CALJIC No. 3.31 and CALJIC No. 2.02, the specific intent element of voluntary manslaughter would, of course, have been emphasized, but it was unnecessary in light of appellant's requested instructions defining voluntary and involuntary manslaughter.

## III

The jury was instructed that if they had a reasonable doubt as to whether the offense was first or second degree murder, their verdict should be for second degree murder. The jury was also instructed that if they had a reasonable doubt as to whether the offense was second degree murder or manslaughter, their verdict should be for manslaughter. The judge was not requested nor did he give a similar instruction with regard to voluntary and involuntary manslaughter. However, it is unnecessary for us to decide whether such instruction was required, for under the facts of the case, there is no question that involuntary manslaughter was not supported by the evidence. The jury found appellant guilty of voluntary manslaughter and that he used a firearm in the commission of the offense. The jury also found appellant guilty of possession of a firearm by a felon. In defining involuntary manslaughter the court instructed the jury that a killing is unlawful if it occurred in the commission of an act ordinarily lawful which involves a high degree of risk of death or great bodily harm, without due caution and circumspection. ■ As the jury found that a firearm was used by a felon (appellant) and that it was not used in self-defense, the use of the gun was unlawful. Thus the commission of the act was not lawful and did not come within the definition of involuntary manslaughter.

## IV

During trial, but out of the presence of the jury, appellant offered to stipulate that he had been convicted of a felony for purposes of count two, which charged violation of Penal Code section 12021. Appellant argued that admission of evidence pertaining to the prior felony would be extremely prejudicial to his case. Appellant suggested that the jury be asked for a special verdict as to whether appellant was in possession of a firearm. If the jury found that appellant possessed or used a firearm in the commission of the offense, appellant would stipulate to a finding of guilt under Penal Code section 12021.

The court ruled that since the conviction was an element of the offense charged in count two, the district attorney had the right to refuse to accept the stipulation and would be permitted to present evidence concerning the prior felony conviction to the jury. Evidence of appellant's prior conviction for possession of dangerous drugs was presented to the jury.

■ Where the prior conviction is an element of the charged offense, the defendant may not preclude its introduction into evidence by

admitting the felony conviction out of the presence of the jury; the prior conviction as well as the possession of a firearm must be proved and determined by the jury. (*People* v. *Faulkner* (1972) 28 Cal.App.3d 384, 393 [104 Cal.Rptr. 625].)

We followed *People* v. *Faulkner, supra,* in our recent opinion, *People* v. *Morrison* (1977) 67 Cal.App.3d 425, 427-428 [136 Cal.Rptr. 650], and are not convinced by the arguments presented in appellant's brief nor in the recent case of *People* v. *Sherren* (1979) 89 Cal.App.3d 752 [152 Cal.Rptr. 828], to change our minds.

### V

■ Appellant contends that the court erred in not giving his requested instruction, a modification of CALJIC No. 2.50, which read: "Evidence has been received tending to show that the defendant committed the crime of possession of dangerous drugs or a controlled substance on a prior occasion. Such evidence was not received and may not be considered by you to prove that he is a person of bad character or that he has a disposition to commit crimes. It is only relevant as one of the elements of the charge of possession of a firearm by a felon and for no other purposes."

Appellant cites no relevant authority for his proposition that a cautionary instruction is required where evidence of a prior felony conviction is admitted for the purpose of proving an element of a charged crime. Cases which appellant cite relate to the introduction of evidence of former crimes to prove some fact other than the defendant's disposition to commit such acts (*People* v. *Swearington* (1977) 71 Cal.App.3d 935, 947 [140 Cal.Rptr. 5]), or for the limited purpose of impeachment (*People* v. *Mayfield* (1972) 23 Cal.App.3d 236, 244 [100 Cal.Rptr. 104]).

The jury was properly instructed as to the purpose for admitting evidence of appellant's prior felony conviction. Accordingly, the court did not err in refusing to give appellant's modified instruction relating to limited admissibility of his prior felony conviction.

### VI

Appellant contends that under Penal Code sections 4019 and 2900.5, he is entitled to additional credit for good time/work time while in custody before conviction and sentence to state prison. Similar issues are pending

before the Supreme Court in *People* v. *Sage*■ (Cal.App. Crim. 20997), *People* v. *Brown*\* (Cal.App. Crim. 20998), and *In re Davis*\* (Cal.App. Crim. 20999). ■ Because the Supreme Court will decide the question, we summarily hold that on its face, Penal Code section 4019 does not apply to presentence custody of defendants convicted of a felony and sentenced to state prison; however, constitutional equal protection of the law principles require that appellant be given credit for good time/work time pursuant to section 4019.

The judgment of conviction is affirmed and the cause remanded to the superior court for determination of the amount of good time/work time credit to which appellant may be entitled under Penal Code section 4019. The superior court is further directed to modify the abstract of judgment accordingly and to transmit it to all appropriate authorities.

Rattigan, J., and Poché, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 8, 1979. Mosk, J., was of the opinion that the petition should be granted.