[Crim. No. 20813. First Dist., Div. Two. Mar. 24, 1981.]

**THE PEOPLE, Plaintiff and Respondent, v.
CARL EDWARD GREEN, Defendant and Appellant.**

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Deborah Long, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Gloria F. DeHart and Kristofer Jorstad, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**TAYLOR, P. J.**—Defendant, C. E. Green, appeals from a judgment entered on jury verdicts finding him guilty of one count of possession of heroin for sale (Health & Saf. Code, § 11351) and one count of possession of a concealable firearm by an ex-felon (Pen. Code, § 12021, subd. (a)). His major contentions on appeal are that: 1) evidence seized from his apartment and its storeroom was the fruit of an illegal search, as the affidavit failed the reliability prong of *Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509]; 2) there was no probable cause to search the separate storeroom; and in any event, the search violated his right to privacy; 3) the court erred in denying, pursuant to Evidence Code section 1042, subdivision (b), his motion to disclose the identity of the various informants, as each was a material witness; and 4) the court erred in permitting the prosecution to prove his prior burglary conviction to the jury after his admission of the prior in a pretrial hearing, pursuant to *People* v. *Hall* (1980) 28 Cal.3d 143 [167 Cal.Rptr. 844, 616 P.2d 826]. For the reasons set forth below, we have concluded that although *Hall* applies retroactively to the instant case, the error was not prejudicial and the judgment must be affirmed.

The record reveals the following chronology of pertinent facts: On May 1, 1979, San Jose Police Officer Craig Buckhout obtained a warrant to search apartment No. 9, the manager's apartment, as well as "all storage areas designated for Unit #9," at 1298 Tripp Avenue. The affidavit in support of the search warrant was executed by Buckhout, who averred that he learned of defendant's apartment address, telephone number and heroin sale activities from five sources, four of which were confidential informants. The first source, Fawn Hetland, reported

that on February 14, 1979, she had been robbed while purchasing heroin at defendant's apartment. Hetland was known to the officers as a heroin addict. Buckhout also learned from Hetland that on April 24, 1979, she had purchased heroin from someone named "Buddy" on the same premises. On April 24, 1979, informant one identified the seller of the heroin at that address as "Buddy." Informant two told Buckhout that he had seen quarter-spoons of heroin packaged in balloons at defendant's residence. Informant three told Buckhout that he had not purchased heroin from defendant, but had been told by informant two that the latter had obtained heroin from "Buddy and Marge," who lived near 26th Street and whose telephone number was 286-4362.

Buckhout also listened to a recorded statement made by informant four on May 1, 1979, to Officer Rose. In that conversation, informant four stated that he had purchased heroin at defendant's apartment on April 27, 1979, and that "Buddy" kept most of the heroin in a storage maintenance room located on the same side and floor as "Buddy's" apartment. Buddy, as the manager, had sole control over the access to the storage room.

The police previously had not received information from informants two, three or four. After informant one had been arrested for being under the influence of heroin, he gave the above information to the police. Because of criminal charges pending against informants three and four, both provided Buckhout with defendant's and Marge Miyashi's address, namely, 1298 Tripp, No. 9, and telephone number 286-4362. Neither informant two or three, however, was promised anything as to the disposition of his respective case in exchange for the information.

At the suppression hearing, Officer Lewis Smith testified that about 7 p.m. on May 2, he and six additional officers executed the search warrant at defendant's apartment. As Rose and Smith approached apartment No. 9, they observed three parties, including defendant, standing outside the apartment.[1] When the officers announced their authority and purpose, one party, the nonappealing codefendant Combs, attempted to flee but was chased and detained. Defendant invited the officers into the apartment, saying "Go on in, I have nothing to hide."

---

[1]Smith testified that he recognized defendant because he had contacted him four months earlier.

Upon entry, the officers handcuffed and pat-searched defendant; they found a set of keys attached to his belt and over $700 in cash.

While the other officers searched the apartment, Smith attempted to find the manager's storeroom. A male resident of the apartment complex pointed out a door with no markings. After first complying with "knock-notice" requirements, Smith entered the storeroom with a key from defendant's key ring, and searched the storeroom. There, Smith discovered 28 bindles of heroin, heroin paraphernalia, and a business card stating: "Kimberly Apartments, 1298 Tripp Avenue, San Jose, Manager, Carl & Marge Green." Sergeant Hunter testified that during the search of apartment No. 9, the officers found additional narcotics paraphernalia,[2] a handgun in the bedroom apparently occupied by defendant and his wife, and $7,000 in cash.

 Initially, we turn to defendant's contentions pertaining to the search warrant. On appeal, defendant first urges that the affidavit was legally insufficient to support the issuance of the search warrant as it did not meet both requirements of the two-pronged test of *Aguilar v. Texas, supra*, 378 U.S. 108. In *People v. Schulle* (1975) 51 Cal.App.3d 809, 813 [124 Cal.Rptr. 585], this court (Div. One) reiterated these requirements as follows: "'[1] Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, [citation] the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and [2] some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, [citation] was "credible" or his information "reliable" (*Aguilar v. Texas, supra*, 378 U. S. 108, 114...; *Skelton v. Superior Court, supra*, 1 Cal.3d 144, 152 [81 Cal.Rptr. 613, 460 P.2d 485].)'"

Defendant maintains that the information reflected in the affidavit came from several untested, unreliable informants without the necessary corroboration to constitutionally support the issuance of the search warrant for his apartment and the storeroom.

We summarize the applicable rules as follows: "[I]n order for corroboration to be adequate, it must pertain to defendant's alleged

---

[2]Smith was qualified as an expert witness in the possession and distribution of heroin. He testified as to the types of paraphernalia seized and their common functions for heroin users.

*criminal* activity; accuracy of information regarding the suspect generally is insufficient" (*People v. Fein* (1971) 4 Cal.3d 747, 753 [94 Cal.Rptr. 607, 484 P.2d 583]; *People v. Magana* (1979) 95 Cal.App.3d 453 [157 Cal.Rptr. 173]). In addition, corroboration of an unreliable informant's statements may be met by those of another, if they were interviewed independently, at a different time and place (*People v. Balassy* (1973) 30 Cal.App.3d 614 [106 Cal.Rptr. 461]).

Our Supreme Court has suggested several factors for the determination of whether or not the corroboration requirement has been met: "In some instances, the identity of, or past experience with, the informer may provide evidence of the reliability of the information; in others, it may be supplied by similar information from other sources or by the personal observations of the police" (*People v. Superior Court (Johnson)* (1972) 6 Cal.3d 704, 712 [100 Cal.Rptr. 319, 493 P.2d 1183]; *People v. Scoma* (1969) 71 Cal.2d 332, 337 [78 Cal.Rptr. 491, 455 P.2d 419]). ■ Even though information from an informer is expressed in conclusionary language, and there is no showing why the informer is believed to be reliable on the basis of past experience, a magistrate may properly issue a warrant on the basis of such information if the supporting affidavit also recites facts indicating that reliance on the information is reasonable (*People v. Flores* (1968) 68 Cal.2d 563 [68 Cal.Rptr. 161, 440 P.2d 233]; see *People v. Benjamin* (1969) 71 Cal.2d 296, fn. 4, p. 302 [78 Cal.Rptr. 510, 455 P.2d 438]).

■ Defendant maintains that informant one (the only one who previously had given information to Buckhout) was not a reliable and tested informant. Relying on *People v. Superior Court (Johnson)*, *supra*, 6 Cal.3d 704, defendant points to the absence of a showing that the person previously arrested as the result of information given to Buckhout by informant one, had been held to answer or convicted or that the charges against him had not been dismissed. Defendant argues that in the absence of such a showing, the information provided to Buckhout by informant one was not reliable in and of itself.

Defendant's argument overlooks the fact that informant one spoke with first-hand knowledge, as he had purchased heroin from defendant at the latter's apartment. Contrary to defendant's assertion, informant one's tip need not be taken by itself. At the time police officers received the information about the defendant from informant one, they already had been furnished with information by Hetland about purchases she had made successfully at defendant's apartment. Although Hetland's

information had been received two and one-half months earlier and, therefore, would be too stale standing alone (*Hemler* v. *Superior Court* (1975) 44 Cal.App.3d 430 [118 Cal.Rptr. 564]), her information served to confirm and validate the tip provided by informant one and thereby elevated his status to that of a reliable, tested informant.

In *People* v. *Thompson* (1979) 89 Cal.App.3d 425, 429 [152 Cal.Rptr. 495], the trial court's refusal to disclose the identity of an informant was affirmed as: 1) the informant "purported to speak with first-hand knowledge"; and 2) the officer had "independent evidence that the informant was credible." In the case at bench, we have not only the informant one's first-hand experience, but also the officers' knowledge of defendant's activities from Hetland, and corroborative information from three other informants.

Although the affidavit reflected that informants one, two and three knew each other, the circumstances under which they were interviewed established that each was sufficiently independent. Sworn statements state that informants one and two "were interviewed separately and had no opportunity to discuss with each other the information provided until after both had spoken with affiant." Similarly, informant three "was spoken with separately, and on a different date from Informants #1 and #2." Informant four was a completely independent source. Taken together, the three informants' statements and the manner in which they were taken were sufficiently independent to be corroborative (*People* v. *Balassy, supra*, 30 Cal.App.3d 614, 621; *People* v. *Sheridan* (1969) 2 Cal.App.3d 483, 489 [82 Cal.Rptr. 695]).

██ Defendant's contention that there was no probable cause to search the storeroom is equally without merit. Defendant asserts that: 1) informant four's references to the storeroom by themselves did not furnish sufficient substantiation for probable cause to search the storeroom; 2) probable cause to search the apartment did not yield implied authorization to search the storeroom, as it was a structure separate and apart from defendant's apartment and probably was utilized by other tenants in the building.

In accordance with the authorities cited above, we agree with the trial court's determination that informant four's statements about defendant's use of the storage room was validated by the corroborative information concerning defendant's narcotic activity from the other four informants.

As for the alleged failure of the officers to establish probable cause to search the separate and detached storeroom, the description in a search warrant must be sufficiently definite that the officer conducting the search "can with reasonable effort ascertain and identify the place intended" (*Steele* v. *United States, No. 1* (1925) 267 U.S. 498, 503 [69 L.Ed. 757, 760, 45 S.Ct. 414]; *People* v. *Dumas* (1973) 9 Cal.3d 871, 880 [109 Cal.Rptr. 304, 512 P.2d 1208]). Nothing should be left to the discretion of the officer (*Marron* v. *United States* (1927) 275 U.S. 192, 196 [72 L.Ed. 231, 237, 48 S.Ct. 74]).

The instant warrant authorized the search of apartment No. 9, the manager's apartment, and "all storage areas designated for Unit #9." Although the storeroom was unmarked, in *People* v. *Estrada* (1965) 234 Cal.App.2d 136 [44 Cal.Rptr. 165, 11 A.L.R.3d 1307], this court (Div. One) noted at page 149: "It seems to us that the officers executing the warrant could, as they apparently did, without confusion or excessive effort, identify the part of the premises to be searched."

Here, while the door of the storeroom was unmarked, an uninvolved tenant pointed it out in response to the officer's inquiry about the location of the manager's storeroom. The tenant's response constituted a sufficient identification without excessive effort or confusion. Furthermore, the description of the location of the storage area in the affidavit provided by informant four,[3] the warrant's description of the authorized area, coupled with the tenant's identification of the manager's storeroom, and the successful use of the key seized from defendant, vitiated any reasonable possibility that any other tenant's rights of privacy would be abrogated and also negated any inference of an exploratory search on the part of the officers.

■ Defendant next complains of the trial court's denial of the motion to disclose the identities of the informants as they were "material" witnesses on the issue of guilt or innocence.

Our Supreme Court has set forth the standard which, if met, discharges the defendant's burden. The defendant shows the existence of the necessary elements when, based upon some evidence (*Price* v. *Superior Court* (1970) 1 Cal.3d 836, 843 [83 Cal.Rptr. 369, 463 P.2d 721]), "defendant demonstrates *a reasonable possibility that the anon-*

---

[3]Informant four described the location of the storeroom as on the same side and floor of the building as apartment No. 9.

*ymous informant* whose identity is sought could *give evidence on the issue of guilt which might result in defendant's exoneration*"; italics added; (*People* v. *Garcia* (1967) 67 Cal.2d 830, 836-839 [64 Cal.Rptr. 110, 434 P.2d 366]; see also *Theodor* v. *Superior Court* (1972) 8 Cal.3d 77, 88 [104 Cal.Rptr. 226, 501 P.2d 234]). Accordingly, the defendant's showing must encompass more than speculation (*People* v. *Martin* (1969) 2 Cal.App.3d 121, 127 [82 Cal.Rptr. 414]).

Here, defendant argues that because of the vantage points of informants one, two and four, there is a reasonable possibility that the disclosure of their respective identities could lead to proof that other persons had exclusive possession of the heroin which was located in the storeroom to which defendant merely had access. As indicated above, the record indicates that: 1) the heroin alleged to be in defendant's possession, accompanied by a business card bearing defendant's name and occupation as manager, was discovered in a storeroom described as belonging to the manager; 2) the key seized from defendant's belt opened the door to the storeroom. Admittedly, the narcotics paraphernalia discovered throughout defendant's apartment including Comb's room, the wallet belonging to Combs in one of the bedrooms, and Comb's fingerprints discovered on one of the bindles of heroin, may support an inference that Comb was an active participant in the drug dealing on the premises. The record, however, indicates no reasonable possibility that the unidentified informants could establish that defendant's degree of dominion over the contraband found in the storeroom was insufficient to support the verdict and judgment as to the count for possession of heroin for sale.

We note that in *People* v. *Hambarian* (1973) 31 Cal.App.3d 643 [107 Cal.Rptr. 878], the defendant urged that an informer might indicate that someone other than the defendant was present four days earlier and, therefore, the defendant's possession "was not exclusive." The court observed, at page 659, that conviction "need not be predicated upon exclusive possession, and a showing of nonexclusive possession *would not* exonerate defendant. (*People* v. *Redrick*, 55 Cal.2d 282, 288-289 . . .; *Frazzini* v. *Superior Court*, 7 Cal.App.3d 1005, 1013 . . .; *People* v. *McGlory*, 226 Cal.App.2d 762, 766 . . . .)" (Italics added.) The court further indicated that there was no reasonable possibility that the informant might give testimony as to who controlled the contraband three days later (*People* v. *Martin, supra,* 2 Cal.App.3d 121). In the instant case, there was no reasonable possibility that any of the informants could have provided information as to who controlled the heroin

in the storeroom almost a week later. Thus, defendant has not made the required showing that the failure to disclose the identity of any of the four unidentified informants resulted in the denial of a fair trial.

■ Finally, defendant urges that the trial court committed reversible error by permitting the prosecution to prove his prior burglary conviction to the jury, despite his admission of that prior in a pretrial hearing. Defendant relies on the reasoning of *People* v. *Sherren* (1979) 89 Cal.App.3d 752 [152 Cal.Rptr. 828]. In *Sherren*, the court held that the defendant's admission of a prior felony conviction precluded the prosecution from proving the conviction to the jury as an element of Penal Code section 12021.

The record indicates that at a pretrial hearing out of the presence of the jury, defendant admitted that he had suffered prior convictions of burglary and petty theft with a prior felony conviction.[4] The court ruled that the prosecution could prove the prior burglary as part of its case in chief. As a result, the jury was apprised that defendant had a prior conviction of burglary. The court below relied on *People* v. *Black* (1979) 96 Cal.App.3d 846 [158 Cal.Rptr. 449], also decided by this court (Div. Four), which criticized *Sherren, supra,* and held (at p. 854) that the prosecution was entitled to prove the existence of a prior and that a defendant *may not* preclude its admission into evidence by stipulation.

Subsequently, in *People* v. *Hall* (1980) 28 Cal.3d 143 [167 Cal.Rptr. 844, 616 P.2d 826], our Supreme Court affirmed the reasoning of *Sherren.* Thus, the prosecution is required to accept the defendant's stipulation that he suffered a prior felony conviction which is an element of the charged offense, and thereby is precluded from presenting evidence of the conviction to the jury. In *Hall*, our Supreme Court further stressed that only relevant evidence is admissible, i.e., that which tends to prove a disputed fact in issue. Here, defendant concedes that *Hall* resolved the issue of whether an admission (as was the case here) has the same effect as a stipulation, in rendering uncontroverted an element of the case. *Hall*, at page 152 clearly indicated that the two terms are synonymous in meaning and effect, as follows: "Thus, if a defendant offers to *admit* the existence of an element of a charged offense, the prosecutor must accept that offer and refrain from introducing evidence

---

[4]The record indicates that defendant also was charged with prior convictions of burglary and petty theft with a prior theft conviction. On the day of the trial, defendant admitted the priors. The prior theft conviction was stricken from the information.

of other crimes to prove that element to the jury.... [¶] There is one narrow exception to this rule of exclusion. If the facts to which the defendant has offered to stipulate retain some probative value, then evidence of such facts may be introduced. For example, if evidence remains relevant to an issue not covered by the *stipulation or admission*, the evidence is admissible on the remaining issue" (italics added).

Although in light of the above the proof of the prior burglary in the presence of the jury was error pursuant to *Hall, supra*, we focus on the impact of the erroneously admitted prior burglary on the jury, and the prejudicial effect, if any. The presence of the weapon in defendant's bedroom stands uncontradicted. Thus, in view of the overwhelming evidence of defendant's guilt of the weapons possession charge in the instant case, we (as did the court in *Hall*), conclude that there was no reasonable probability that the jury was so prejudiced by the admission of the prior burglary as to require reversal (*People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243]).

Although we, therefore, do not need to reach the question of the retroactive application of *Hall, supra*, that was the only issue addressed by defendant at oral argument. Accordingly, we are constrained to discuss it briefly. At oral argument, defendant (relying on *People* v. *Mutch* (1971) 4 Cal.3d 389, 394-395 [93 Cal.Rptr. 721, 482 P.2d 633], and *People* v. *Heredia* (1971) 20 Cal.App.3d 194, 199 [97 Cal.Rptr. 488]) urged that since in *Hall, supra*, at pages 154-156, our Supreme Court was persuaded by the reasoning of this court (Div. Three) in *People* v. *Sherren, supra*, 89 Cal.App.3d 752, 759[5] that *Hall* was foreshadowed by a prior decision and it automatically applies to his case, regardless of the considerations appropriate to retroactivity. We, however, agree with the People's argument that *Hall, supra*, enunciated new law. *Sherren, supra*, was the only case that foreshadowed *Hall*. The number of cases disapproved by the court in *Hall*, footnote 8 at page 156, indicate that the rule enunciated was a new one. Therefore, we apply the three criteria used by the federal and California courts: "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." (*Stovall* v. *Denno* (1967) 388 U.S. 293, 297 [18 L.Ed.2d 1199, 1203, 87 S.Ct. 1967]; *People* v. *Hitch* (1974) 12

---

[5]As indicated above at page 209, the court below relied on *People* v. *Black, supra*, 96 Cal.App.3d 846.

Cal.3d 641, 654 [117 Cal.Rptr. 9, 527 P.2d 361]). Foremost among these is the purpose to be served by the new rule (*Desist* v. *United States* (1969) 394 U.S. 244, 249 [22 L.Ed.2d 248, 255, 89 S.Ct. 1030]); the other two factors are relied upon heavily only when the purpose of the rule does not clearly favor either retroactivity or prospectivity (*Desist, supra,* p. 251 [22 L.Ed.2d p. 256]; *In re Johnson* (1970) 3 Cal.3d 404, 410 [90 Cal.Rptr. 569, 475 P.2d 841]).

As *Hall, supra,* at pages 156-157, indicates that the purpose of the new rule bears on the integrity of the factfinding process, we agree with defendant that *Hall* should be applied retroactively to pending cases such as his. However, we have indicated above that the application of the new *Hall* rule to the instant facts does not result in a prejudicial error.

The judgment is affirmed.

Rouse, J., and Smith, J., concurred.

A petition for a rehearing was denied April 23, 1981.