[Crim. No. 4604. Fifth Dist. Dec. 31, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD HICKMAN, Defendant and Appellant.

COUNSEL

James Kyle Gee, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Eddie T. Keller, W. Scott Thorpe and Jane Kirkland Fischer, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ANDREEN, J.**—Following a jury trial, appellant was found guilty of three crimes as charged in the information: count I—possession of a firearm by an ex-felon (Pen. Code, § 12021); count II—ex-felon in possession of a concealed firearm in a vehicle (Pen. Code, § 12025, subd. (a)); count III—carrying a loaded firearm in a vehicle while in a public place (Pen. Code, § 12031, subd. (a)). He appeals from the ensuing judgment, citing *Hall*[1] error.

FACTS

Acting on a tip from appellant's parole officer, Jesse Rocha, that appellant customarily carried a handgun, police stopped appellant while he was driving his Volkswagen on a public street. There were four others in the car. A search of a map pouch in the driver's door yielded a loaded .38 caliber revolver and a bowie knife. The pouch was bulging from its contents but neither the revolver nor the knife was visible until the pouch was pulled open. Appellant acknowledged ownership of the knife, which he used in his trade of installing sheetrock, but denied knowledge of the presence of the gun, which was not registered to him.

---

[1] *People v. Hall* (1980) 28 Cal.3d 143 [167 Cal.Rptr. 844, 616 P.2d 1383].

Appellant's girl friend, Lynne Langford, who had been one of the four passengers at the time of the arrest, testified she had been in possession of the car for the two evenings preceding the morning of the arrest, and had placed the gun in the car. She stated she was a prostitute and had the revolver for protection. She had not told appellant the gun was there when she next saw him—when she picked him up the morning he was arrested, Friday, May 11, 1979.

Her testimony was corroborated by Parole Officer Rocha, who had talked with appellant at Hickman's mother's home on the evening of Wednesday, the 9th. Rocha testified he had not seen the Volkswagen when he was there.

One of appellant's coworkers also testified that the car had been in Ms. Langford's possession from Wednesday to Friday. He testified he had driven Mr. Hickman to and from work on Thursday. Both the coworker and appellant testified that Lynne frequently used appellant's car.

Ms. Langford admitted she knew little about the operation of the weapon but stated she had been told how to cock the weapon and how to put the safety on. However, at trial she could not remember how to cock it. Officer Salazar testified on rebuttal that the revolver had no safety but that he was not familiar with that particular model of revolver. He was not sure if the hammer could act as a safety.

### THE PROFFERED STIPULATION

Prior to empaneling the jury, defense counsel offered to stipulate to a prior conviction of receiving stolen property in April 1969, a felony, so that no reference would be made to the prior during trial. The case was tried one month before our Supreme Court filed *People v. Hall, supra,* which held that in a prosecution for violating Penal Code section 12021, the element of a prior conviction of a felony may not be given to the jury if the accused stipulates to it, unless the state can demonstrate that application of the rule will impair the People's case or preclude the presentation of alternative theories of guilt.

Deeming itself bound by pre-*Hall* authority (but see *People v. Sherren* (1979) 89 Cal.App.3d 752 [152 Cal.Rptr. 828]), the trial court refused to require the People to accept the stipulation. Had the stipulation been accepted, the existence of the prior would not have been

known to the jury because the court had ruled that since the prior was 10 years old, it could not be used for impeachment. (*People* v. *Beagle* (1972) 6 Cal.3d 441, 452 [99 Cal.Rptr. 313, 492 P.2d 1].)

RETROACTIVITY

In regard to the issue of retroactivity, the law is well summarized in *People* v. *Cooper* (1979) 94 Cal.App.3d 672 [156 Cal.Rptr. 646]: "Like the United States Supreme Court, California courts use the following criteria to determine whether a new rule of decisional law in criminal cases should be applied retroactively: (1) the purpose of the new rule, (2) the extent of the reliance by law enforcement authorities on the old rule, and (3) the effect on the administration of justice of retrospective application of the new rule. (*People* v. *Gainer* (1977) 19 Cal.3d 835, 853 . . . .) The factors of reliance and burden on the administration of justice are of significance only when the question of retroactivity is a close one in light of the purpose of the new rule. (*In re Johnson* (1970) 3 Cal.3d 404, 410 . . . .)" (*Id.*, at p. 680.) The question before the court in *Cooper* was whether *Pope*[2] should apply retroactively. The court found that it did, because denial of counsel denies fair trial.

*Gainer* involved the giving of an "*Allen*"[3] charge, long used by trial judges for extracting verdicts from deadlocked juries. In holding that it is error for a trial court in a criminal case to give such an instruction, the court stated that the new rule should apply to all cases not final as of the date of the decision. The reasoning was that the disapproval of *Allen*-type charges is not directed at police misconduct, but is aimed at judicial error which significantly infects the factfinding process at trial. The court stated that ". . . neither judicial reliance on previous appellate endorsements of the charge in this state nor any effects on the administration of justice require us to deny the benefit of this rule to cases now pending on appeal." (*People* v. *Gainer* (1977) 19 Cal.3d 835, 853 [139 Cal.Rptr. 861, 566 P.2d 997, 97 A.L.R.3d 73].)

■ It is apparent from *Johnson* that there is a two-step inquiry. If, upon consideration of the purpose of the new rule, it is determined the rule *goes to the integrity of the factfinding process*—relates to the issue of guilt—*retroactive application is automatic*. The two factors of reli-

[2]*People* v. *Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].

[3]*Allen* v. *United States* (1896) 164 U.S. 492 [41 L.Ed. 528, 17 S.Ct. 154].

ance and burden on the administration of justice do not come into play. (*In re Johnson* (1970) 3 Cal.3d 404, 410, 413 [90 Cal.Rptr. 569, 475 P.2d 841].)

Bringing before the jury a prior felony is highly prejudicial and significantly impairs the reliability of the factfinding process. It therefore denies a fair trial. Although the California Supreme Court gave no guidance as to retroactivity in *Hall*, there is no reason to deny the benefit of the rule to cases now pending on appeal; therefore, the defendant is entitled to its benefits. (*People* v. *Faught* (1981) 124 Cal.App.3d 848, 856-857 [177 Cal.Rptr. 637].) To the same effect is dictum in *People* v. *Green* (1981) 117 Cal.App.3d 199, 210 [172 Cal.Rptr. 582].

### FACTS DEMONSTRATING PREJUDICE

The court took steps to reduce the possibility of prejudice. When it read the information to the jury at the start of the trial, it did not read that part of the information which separately alleged the prior. However, it did inform the jury of the prior by reading other portions of the information. Thus the court read: "THE COURT: ... '... [¶] Count 1. Ronald Hickman of a felony, to wit: Possession of firearm by ex-felon or addict, Section 12021 of the California Penal Code, in that on or about the 11th day of May, 1979, did willfully and unlawfully own and have in his possession and under his custody and control, a certain firearm, to wit, a revolver, capable of being concealed upon his person, the person having theretofore been duly and legally convicted of a crime, a felony, to wit, the crime of receiving stolen property, on the 22nd day of April, 1969, ... in violation of Penal Code Section 496....'"

When it read count II, the court again informed the jury that appellant had been convicted of the crime of receiving stolen property.

When, as part of the effort to minimize prejudice Parole Officer Rocha testified, the court ruled that his occupation would not be disclosed to the jury.

The next mention of ex-felon status was the statement of the court to the jury "the Court is taking judicial notice of the prior conviction, which means that you are to deem to have been conclusively proved the fact that the Defendant has been previously convicted of a felony." In his argument to the jury the prosecutor stated: "We have proved each

and every element in this case. The defendant was in possession of the gun, he is an ex-felon, the gun was found in the vehicle."

To summarize, the jury heard at the commencement of the trial and before evidence was taken that the appellant had suffered a conviction of receiving stolen property, a felony, 10 years prior to trial. The next time that this was mentioned was after the close of evidence and just before arguments. At that time, the nature of the felony was not disclosed. During argument, although the felony was alluded to, it was not disclosed.

The procedure utilized by the trial court exaggerated, rather than minimized, the prejudicial effect. This was a one-day trial and, although it is possible that one or more of the jurors remembered the specification of the felony from the reading of the information at the outset, the information is framed in formal language, not like that ordinarily heard by the man in the streets. It is probable that the fact that would stand out in the jurors' minds was that appellant was an "ex-felon or addict," as he was termed at the outset of the reading.

The jury instruction, given in the form of CALJIC Nos. 12.40 and 3.31.5,[4] fourth edition 1979, used the words "felony" and "ex-felon" without being more specific.

The method adopted had some of the dangers discussed in *People v. Rollo* (1977) 20 Cal.3d 109 [141 Cal.Rptr. 177, 569 P.2d 771], which noted that if a jury is advised only that the defendant has been convicted of "a felony," the members will not let the matter rest, but will indulge in brisk speculation as to the nature of the conviction. Only if we may assume that the jurors recalled the nature of the crime from

---

[4]CALJIC No. 3.31.5 was read to the jury as follows: "In each of the crimes charged in Counts I, II and III, of the information, namely, possession of a concealable weapon by an ex-felon, carrying a concealed firearm within a vehicle controlled by an ex-felon, carrying within a vehicle a loaded firearm on a public street in an incorporated city, there must exist a union or joint operation of act or conduct and knowledge in the mind of the perpetrator and unless such mental state exists, the crime to which it relates is not committed.

"In the crime of possession of a concealable weapon by an ex-felon, the necessary mental state is knowledge.

"In the crime of carrying a concealed firearm within a vehicle controlled by an ex-felon, the necessary mental state is knowledge.

"In the crime of carrying within a vehicle a loaded firearm on a public street in an incorporated city, the necessary mental state is knowledge."

the reading of the information is this danger dissipated. Such an assumption may not be warranted. If the matter had been stated in words of common currency, rather than the stilted language of a pleading, we would have more reason to make such an assumption.

If we assume the jury remembered the nature of the conviction, we readily concede that the felony of receiving stolen property is not as likely to incite strong feelings of revulsion as would a crime of violence. However, there is nothing in *Hall* to indicate that trial courts should discriminate between crimes that one might think less prejudicial than others. Jurors are tired of crime and are fearful of its consequences. Any prior crime important enough to be treated as a felony is going to have a substantial impact.

The case was a close one. The gun was not found on the person of the appellant, but in his car, next to him in the map pouch on the driver's door. The appellant denied knowledge of the gun's presence. It could not be seen without removal of some items stored on top of it. The evidence of three witnesses established that the appellant did not have possession of the Volkswagen for a period of time prior to the arrest. Lynne Langford testified that she had the car for the two evenings preceding the morning of the arrest and that she put the gun there. She was a prostitute, and thus had a need for one. Although she was impeached somewhat about her familiarity with the gun, particularly about whether or not it had a safety, the record is very confused and it is difficult to determine whether or not the gun had a safety. Rocha, a person with a responsible position and therefore presumably not a weak witness, testified that he did not see the Volkswagen at appellant's residence two nights before the arrest. Appellant's coworker, Michael Shepard, testified that he and appellant worked together for a dry wall company for the week preceding the arrest. The arrest was on Friday, and Shepard testified that appellant stayed at Shepard's apartment for two or three nights that week. The job site was in Huron, "a long drive," so they pooled their cars. He related that on the Wednesday preceding the arrest, appellant turned his car over to Ms. Langford, and they drove to work in Shepard's car the next day. He further testified that appellant loaned his car to Langford frequently.

Against the circumstantial evidence that the defendant was found driving his car with a gun in a map pocket, stands the testimony of three witnesses who corroborated appellant's denial of knowledge of the existence of the gun.

■ It is appropriate to apply a divergence from the *Watson*[5] standard in this case. As stated in Justice Friedman's concurring opinion in *People* v. *Reeder* (1976) 65 Cal.App.3d 235, 244 [135 Cal.Rptr. 421]: "'Where the evidence, though sufficient to sustain the verdict, is extremely close, "any substantial error tending to discredit the defense ... must be considered as prejudicial."'"

The trial court was aware of the prejudicial effect of the evidence and took precautions, albeit counterproductive, to minimize it. The bringing before the jury of appellant's status as an ex-con—a word of opprobrium in most circles—was a "substantial error" which discredited the appellant. It mandates reversal.

The case is quite unlike others which have found *Hall* error harmless. In *Hall* itself, there were several eyewitness identifications of the defendant and his fingerprint was taken from a bottle found in a dumpster across the street from one of the crime scenes.

In *People* v. *McClindon* (1980) 114 Cal.App.3d 336, 340 [170 Cal.Rptr. 492], the defendant in a Penal Code section 12021 case "admitted that he had possession of the firearm for approximately five months and that he kept it by his bed for protection because he did not want to shoot anybody with his rifle." He had fired three shots out the bedroom window in response to the noise of a ten-year-old boy climbing over a fence to retrieve a ball. In these circumstances the court held that informing the jury of his ex-felon status was *Watson*-standard harmless error.[6]

The defendant in *People* v. *Green, supra,* 117 Cal.App.3d 199 was charged with possession of heroin for sale in addition to the section 12021 charge. A search of his apartment revealed a handgun in the bedroom, the possession of which the defendant apparently never disputed. ("The presence of the weapon in defendant's bedroom stands uncontradicted." (*Id.,* at p. 210.)) The court thought this "overwhelming evidence of defendant's guilt of the weapons possession charge" (*ibid.*) and held there was no *Watson* error.

---

[5]*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], to be reversible error, a different result must be reasonably probable without the error.

[6]*Ante,* footnote 5.

And in *People* v. *Faught, supra,* 124 Cal.App.3d 848 there was no *Watson* error because the prior was admissible for the purpose of impeachment.

In the instant case the evidence was much weaker than in *Hall, McClindon* and *Green.* The error was therefore prejudicial.

RETRIAL

The holding in *Hall* is not without its practical problems. As noted therein, there is the possibility that the jury may rebel and exercise its "naked power" to acquit because the jury might believe that possession of a concealable firearm should not be against the law. In fact, its members may very well know that mere possession is no offense. It was possible to obviate the problem in *Hall* because the defendant offered to stipulate that if he were found to have possessed a firearm during the robberies he would be guilty of the section 12021 charges.

In the instant case, where Penal Code sections 12021 and 12025, subdivision (a), counts are accompanied by a Penal Code section 12031, subdivision (a), misdemeanor count, the most equitable stipulation would be that the defendant would be tried on count III and a guilty verdict on that count would be deemed to be a guilty verdict on counts I and II. There would be, of course, proper *Boykin-Tahl* examination. (See *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 604 [119 Cal.Rptr. 302, 531 P.2d 1086].)

Alternative procedures might involve:

(1) The defendant would enter guilty pleas to the sections 12021 and 12025, subdivision (a), counts, with the understanding that, if acquitted on count III, the guilty pleas could be withdrawn. The trial court's authority to allow withdrawal is found in Penal Code section 1018. After acquittal and withdrawal of the pleas, the state would be barred from proceeding on counts I and II by the doctrine of collateral estoppel. (See *People* v. *Taylor* (1974) 12 Cal.3d 686 [117 Cal.Rptr. 70, 527 P.2d 622].)

(2) The jury could be given the guilty issue on count III, with some special verdict issues presented to them which would appear related to count III, but which would permit the trial court to render verdicts on counts I and II pursuant to Penal Code section 1152.

(3) The defendant could stipulate that counts I and II would be "tried" by the court, with the appropriate waiver of the right to a jury trial. The trial court would agree to follow the jury's lead on the guilt issue on count III.

There may be other approaches. In a case such as this where a technique adequately insulates a defendant from prejudice, failure to agree to a reasonable one selected by the court is grounds for waiver of the *Hall* safeguards. The objective of a trial remains the ascertainment of truth; a trial court should not have to suffer gamesmanship by a defendant who would wish to invoke the jury's "naked power."

The judgment is reversed.

Franson, Acting P. J., and Stone (C. V.), J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.