[No. B041193. Second Dist., Div. Two. Dec. 18, 1989.]

In re CHRISTOPHER R., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Appellant, v.
CHRISTOPHER R., Defendant and Respondent.

902

COUNSEL

Ira Reiner, District Attorney, Arnold T. Guminski and Dirk L. Hudson, Deputy District Attorneys, for Plaintiff and Appellant.

Robert M. Granieri for Defendant and Respondent.

OPINION

GATES, J.—A petition was filed against Christopher R., seeking to have him declared a ward of the court (Welf. Inst. Code, § 602) by reason of his having possessed a controlled substance, lysergic acid diethylamide (LSD), for sale (Health & Saf. Code, § 11378). Following an order quashing a search warrant the petition was dismissed. The People appeal.

We have had occasion previously to note with regret the frequency with which juvenile proceedings today focus not on the question of whether a youth's behavior has been such as to render judicial supervision appropriate, but, rather, whether the proofs regarding that behavior were harvested in a seemly manner. *In re Reginald C.* (1985) 171 Cal.App.3d 1072, 1075 [217 Cal.Rptr. 768].) In the present proceeding, the minor, in his effort to avoid a determination on the merits, moved to suppress all proofs of his

misconduct, including the 67 tabs of LSD which had been recovered in his home.

In the affidavit supporting the challenged warrant issued by a municipal court judge, Los Angeles County Deputy Sheriff Richard Lichten had averred in pertinent part: 1. A confidential informant who admitted being an LSD user and dealer had advised Lichten several months earlier that a 16-18-year-old white male named Chris R. had been selling LSD in "sheets" to him and in "hits" to his friends. The informant said Chris R. sold from his automobile and from his person, charged $5 per hit, and was always stocked.

2. Another deputy told Officer Lichten that within the previous 2 weeks he had been informed by 2 citizen informants that a 16-18-year-old white male named Chris R. was selling LSD at a designated coffee shop. They stated he kept LSD "sheets" in his blue Honda. They each had seen him sell paper "hits" for $5, and each had watched some of the purchasers take the drug purchased. When asked how they knew the item being sold was LSD, both informants said they were told by friends who were users. They said they were providing the information to stop drug dealing because they were afraid of LSD's effects.

3. Within 10 days prior to preparing his affidavit, Deputy Lichten was contacted by 2 additional citizen informants who confirmed in extensive and precise detail, based upon their own observations, the minor's sales of contraband at the coffee shop. They added that they had been told by some of his buyers that he often hid LSD under his bed. They said they were providing the information because they wanted to stop Chris R. from selling LSD to their friends before someone got hurt.

4. Deputy Lichten determined that Christopher did live at the address given him by the two most recent informants, and that he drove a blue 1985 Honda, registered to someone living at the same address. On the basis of these facts the officer concluded the minor was actively engaged in selling LSD and that this contraband might be found on his person, in his vehicle, and/or at his home.

For their safety, and because they were then working with law enforcement on other investigations, the identities of the informants were not disclosed. However, no evidence, inconsistent or otherwise, was adduced at the suppression hearing by way of traversing Officer Lichten's verity or that of his informants regarding the facts set forth in the affidavit.

Following a discussion concerning the difference between a motion to quash a warrant and one to traverse the accuracy of its contents, the minor

adopted the former tack, contending only that there had been inadequate corroboration of the informants' advisements and that none of them had personal knowledge linking the contraband to his residence.

The People, naturally, argued against such contentions and, additionally, urged that since Deputy Lichten had proceeded in good faith to obtain a search warrant, the rules set forth in *United States* v. *Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405], precluded suppression in any event.

In quashing the warrant, the court commented with regard to the good faith exception, "I'm missing any sound inference that the officer is putting on the magistrate. I don't find any evidence that he was overreaching or misrepresenting anything. I think the entire argument is what he in good faith believed that he knew, 'does it or does it not suffice?' "

With regard to probable cause, the court continued, "I tell you, it belongs on the bar exam. It's not something that you can just call in a hot minute. It's very close. It's enough information to turn the police on. . . . [¶] I'm not satisfied that this next remedy is to wake up the judge, get a warrant, and walk in the house without further investigation."[1]

■ The dismissal and the underlying suppression order must be reversed. Whether the subject affidavit is read in the common sense manner repeatedly mandated by this country's highest court, or in the grudging, hypertechnical fashion consistently condemned (see *Illinois* v. *Gates* (1983) 462 U.S. 213, 236 [76 L.Ed.2d 527, 546-547, 103 S.Ct. 2317]), it is clear the magistrate to whom it was presented had ample probable cause to authorize the challenged search.

Deputy Lichten had recorded detailed information earlier received from a confidential informant who admitted criminal activity, showing Christopher had then been selling hits of LSD from sheets of 100 from his automobile and his person for $5. That report carried "an internal guaranty of reliability" because of the informant's admission of his own wrongdoing. (*People* v. *Garcia* (1981) 115 Cal.App.3d 85, 101 [171 Cal.Rptr. 169].)

This information was further supported by that provided by another named officer who had received corroborating assertions and additional details from two citizen informants. (*People* v. *Green* (1981) 117 Cal.App.3d 199, 205-206 [172 Cal.Rptr. 582].) Since these persons were motivated by good citizenship and acted in aid of law enforcement, they could be

---

[1] The basis for the court's remark regarding arousing a judge is obscure, since the warrant was issued at 2:28 p.m. and the right to conduct a nighttime search was neither authorized nor requested.

presumed reliable. (See *People* v. *Smith* (1976) 17 Cal.3d 845, 850-851 [132 Cal.Rptr. 397, 553 P.2d 557]; *People* v. *Schulle* (1975) 51 Cal.App.3d 809, 814-815 [124 Cal.Rptr. 585].)

The reports of these three informants were then confirmed by two more citizens, who, in addition, supplied Christopher's address and a suggestion as to where he might maintain his supply. The reliability of the four citizens was unmarred by any circumstance which would cast doubt on their integrity (see *People* v. *Lombera* (1989) 210 Cal.App.3d 29, 32 [257 Cal.Rptr. 222]; *People* v. *Paris* (1975) 48 Cal.App.3d 766, 772 [122 Cal.Rptr. 272]), and all five informants linked Christopher to the crime by direct observation.

In addition, of course, from the detailed evidentiary facts supplied him, the magistrate who issued the warrant would surely have inferred, even without the tip regarding Christopher's bedroom, that because Christopher had been engaged in an ongoing narcotics business for an extended period of time, he quite possibly might maintain his stock in trade at his residence. (See *People* v. *Johnson* (1971) 21 Cal.App.3d 235, 243 [98 Cal.Rptr. 393].) In sum, the facial adequacy of the affidavit was not open to serious legal challenge.

Far more significantly, however, even if the juvenile court had not been mistaken when it referred to the probable cause here shown as "close," its ruling still would have been erroneous. That is to say, even if such a characterization had been accurate, when combined with the court's further, and necessary, conclusion that Officer Lichten had acted in complete good faith when he honestly set forth all facts known to him, neither omitting nor adding thereto, it should have denied Christopher's motion under the good-faith exception explicated in *United States* v. *Leon, supra,* 468 U.S. 897.

After innumerable repetitive reminders, it now appears that virtually every member of this state's constabulary is convinced of the validity of, and the need to conform his actions to, the observation made by Mr. Justice Jackson over 40 years ago in *Johnson* v. *United States* (1948) 333 U.S. 10, 13-14 [92 L.Ed. 436, 440, 68 S.Ct. 367]:

"The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. . . ."

In truth, the risk today is that even after an officer has presented his evidence fairly and fully to "a neutral and detached magistrate," inquiring as to its adequacy, and been assured of its legal sufficiency, he may later discover that the fruits of his potentially perilous labors are to be suppressed because another "neutral and detached" jurist has subsequently disagreed with his colleague's earlier conclusion. When this occurs, of course, several officers' lives may have been needlessly placed in jeopardy during their performance of the fool's errand the warrant commanded them to perform. In addition, in such an instance the guilty adult must then go free, or the troubled youth deprived of possibly beneficial guidance, since it will no longer be possible to conduct the further investigation, or to gather the additional evidence, that would have satisfied the second judicial reviewer had he been first consulted.

Fortunately, as noted, in the absence of some false or recklessly inaccurate or misleading material contained in an affidavit, or some proof that a magistrate simply has abandoned his official duties, the rules explicated in *United States* v. *Leon, supra,* 468 U.S. 897, when properly applied, will serve to prevent such unhappy and socially undesirable scenarios.

The order quashing the warrant and dismissing the petition is reversed.

Compton, Acting P. J., and Fukuto, J., concurred.

Respondent's petition for review by the Supreme Court was denied March 29, 1990. Mosk, J., and Broussard, J., were of the opinion that the petition should be granted.