Opinion
 

 COBEY, Acting P. J.
 

 Defendant, Freddie Oliver Cooper, appeals from the judgment imposed upon him following his conviction of possession of heroin for sale. (Former Health & Saf. Code, § 11351, subd. (a).) The appeal lies. (Pen. Code, § 1237, subd. I.)
 
 [1]
 

 Defendant raises the following contentions on appeal: (1) The trial court erroneously instructed the jury that it could infer a consciousness of guilt from defendant’s flight; (2) defendant was denied the effective assistance of counsel at trial because his trial counsel brought before the jury the otherwise inadmissible circumstances of a veiy recent prior sale of heroin to a confidential informant at the apartment involved herein without first obtaining the identity of the informant, interviewing him regarding the sale, and placing him on the stand to establish that the sale was not made by defendant; (3) defendant is entitled to additional presentence credit for the good time and work time that he earned in the county jail prior to his state prison commitment.
 

 We will not decide defendant’s third contention because our Supreme Court recently granted a hearing in several cases involving defendants’ rights to good time and work time credit. We will leave that issue open for appropriate disposition after our Supreme Court has spoken. We reject defendant’s first contention regarding the flight instruction but
 
 *676
 
 conclude that there is merit to his second contention that he was denied the effective assistance of counsel at trial. Our disposition will provide appropriate relief to defendant.
 

 Facts
 
 [2]
 

 On March 16, 1977, Officers James Conklin and Caiy Johnston, a
 
 long
 
 with other officers of the Long Beach Police Department, went to 2023 Pasadena Avenue, apartment 6, Long Beach, to execute a search warrant. As the officers approached the front door, they displayed their badges and identification cards, and announced that they were police officers who had a search warrant. When they looked through the screen door, the officers saw defendant and a man named Collins who immediately turned and ran toward the interior of the apartment. While Officer Johnston chased Collins, Officer Conklin chased defendant and followed him about 15 to 20 feet into a bedroom or alcove where defendant dove onto a bed and reached toward his right ankle. When Conklin grabbed defendant’s hand, defendant threw seven colored balloons onto the floor. Conklin took defendant back into the living room where another officer, Smith, arrested and searched him.
 

 Officer Smith recovered a plastic baggie from defendant’s right sock. Meanwhile Officer Conklin returned to the bedroom/alcove and retrieved the seven balloons that defendant had thrown to the floor. A laboratory analysis revealed that the plastic baggie contained about 2.9 grams of powder with an average of 9.3 percent pure heroin, and the 7 balloons, about 1.8 grams of powder with an average of 4.5 percent pure heroin. One officer estimated the value of the heroin to be $775.
 

 Five persons, including defendant, were in the apartment when the officers arrived and the officers arrested two persons in addition to defendant. Upon searching the apartment the officers found a sifter, a measuring spoon and several toy balloons in a kitchen cupboard, but they found no “hype kit” for the injection of heroin.
 

 The officer who examined defendant at the police station about one hour following his arrest concluded that defendant had not recently injected heroin and that he was not under the influence of any drug or narcotic. A narcotics expert opined that defendant possessed the heroin
 
 *677
 
 seized upon his arrest for the purpose of sale. He based this opinion upon the strength, quantity and packaging of the heroin powder, as well as upon the facts that defendant apparently did not use heroin and that a sifter, measuring spoon and additional balloons were found in the kitchen cupboard.
 

 Defendant called David Nelson, a public health department representative, who testified that defendant sought treatment for heroin addiction in August 1976, some six or seven months before his arrest. According to Nelson, defendant had been inhaling (snorting) cocaine, barbiturates and heroin. Cooper then told Nelson that he used $200 worth of heroin daily. Nelson took defendant to a hospital in August 1976 for detoxification treatment. Because defendant failed to report to the clinic where Nelson worked for “follow-up and orientation” after his release from the hospital, the clinic closed his case.
 

 Rosa Jackson, one of the persons who was at the apartment at the time of defendant’s arrest, also testified on his behalf. According to Rosa, defendant did not reside in the apartment and she did not see Officer Smith remove anything from defendant.
 

 Until defendant’s trial counsel cross-examined the investigating officer (Schultz) the jury had not heard any testimony regarding the issuance of the search warrant. Defense counsel brought out the following facts: The warrant was supported by an affidavit. Schultz signed the affidavit after working with an informant. Schultz went to the apartment with the informant a short time before the warrant was served, skin-searched him, paid him $25 and watched him enter the apartment. The informant returned from the apartment several minutes later with a balloon that contained heroin. Schultz did not see who opened the door to let the informant enter the apartment.
 

 On redirect examination of Schultz, the People also questioned Schultz regarding the informant’s acquisition of heroin from the apartment. They brought out the additional fact that, based upon Schultz’ observations and the information that he gained from the informant, Schultz had obtained a search warrant for the apartment and for the person of Freddie Cooper (defendant).
 

 The petition for writ of habeas corpus filed by defendant includes trial counsel’s declaration regarding his trial tactics. In it counsel explains:
 

 
 *678
 
 “Prior to trial, I did not believe that the informant’s identity was material to the issue of Mr. Cooper’s guilt or innocence. It was my belief that any issues concerning the identity of the informant related to probable cause for the issuance of the search warrant. It was my purpose in the motion to traverse the search warrant, to demonstrate a motive on the part of the informant to lie. Beyond that, I did not feel that the informant was material to the issue of guilt or innocence. In hindsight, it appears to me that disclosure of the informant’s identity may well have related to guilt or innocence due to the possible closeness in time between the issuance of the search warrant and its execution. The officers did not wish to indicate the exact date on which the information was received for fear that it would tend to reveal the identity of the informant. It was for that reason that I cross-examined Officer Schultz on the informant’s buy of heroin from his residence in which Mr. Cooper was arrested. It was my feeling that since the officer did not see Mr. Cooper at the time of that purchase, doubt was apparent as to whether the informant actually purchased heroin from Mr. Cooper. If that purchase took place close to the execution of the search warrant, a valid inference is that Mr. Cooper did not possess heroin for the purpose of sale, since he did not sell heroin to the informant.”
 

 Discussion
 

 1.
 
 The trial court properly gave the jury an instruction regarding defendant's flight.
 

 Defendant contends that the trial court erred in instructing the juiy that it could infer a consciousness of guilt from defendant’s flight.
 
 [3]
 
 Specifically, he argues that the evidence of flight was insufficient because he merely retreated into a room that had no exit.
 

 Defendant acknowledges that under California law, evidence of flight requires neither a physical act of running nor a far-away haven
 
 (People
 
 v.
 
 Cannady
 
 (1972) 8 Cal.3d 379, 391 [105 Cal.Rptr. 129, 503 P.2d 585];
 
 People
 
 v.
 
 Jack
 
 (1965) 233 Cal.App.2d 446, 458-459 [43 Cal.Rptr. 566]) but he argues that the evidence of flight in this case is unlike that in the cases that uphold flight instructions, where a defendant engages in conduct that clearly reflects a desire to escape police pursuit.
 

 
 *679
 
 In support of his contention that the evidence of flight was insufficient, defendant relies upon
 
 People
 
 v.
 
 Watson
 
 (1977) 75 Cal.App.3d 384, 402-403 [142 Cal.Rptr. 134] and
 
 People
 
 v.
 
 Coleman
 
 (1978) 84 Cal.App.3d 1016, 1023 [149 Cal.Rptr. 134], In
 
 Watson,
 
 the court held that it was error to give a flight instruction merely because the defendant was arrested two days following the commission of the crime and miles away from the scene of the crime because that circumstantial evidence did not logically support an inference of guilt. Here the evidence of flight was far more direct. In
 
 Coleman,
 
 a prison inmate struck an officer, then ran several steps through an open door where he turned and assumed a “fighting stance.” The
 
 Coleman
 
 court concluded that it was “doubtful that the flight instruction was proper.” But it did not expressly hold that the evidence did not support a flight instruction. Instead it concluded that if it was error to give a flight instruction, the error was not prejudicial. In any event,
 
 Coleman
 
 is distinguishable from this case because Coleman presumably turned back toward the officer when he “turned and assumed a ‘fighting stance,’ ” and thus indicated his desire to confront rather than avoid the officer.
 

 In the case before us we think that defendant’s conduct clearly reflected his desire to escape police pursuit. He ran as soon as the officers announced their presence. The fact that the room into which he ran had no exit does not negate the inference that he clearly desired to escape the police. In his haste he apparently became confused. In
 
 People
 
 v.
 
 Cannady, supra,
 
 8 Cal.3d 379, our Supreme Court found sufficient evidence of flight where two prison inmates walked away from the scene of a crime toward a guardpost within the prison even though presumably the prison had no exit that was ordinarily open for inmates’ departures.
 

 2.
 
 The constitutional inadequacy of defendant’s trial counsel essentially deprived him of his limited defense.
 

 In analyzing the merits of defendant’s contention that he was denied constitutionally adequate assistance of counsel at trial we must first decide upon the applicable standard for such assistance. Until recently a criminal defendant who raised a claim of such incompetency of trial counsel could not obtain relief on appeal unless the record established “that counsel’s lack of diligence or competence reduced the trial to a ‘farce or a sham.’ [Citations.]”
 
 (People
 
 v.
 
 Ibarra
 
 (1963) 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487].) "In
 
 People
 
 v.
 
 Pope
 
 (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859], our Supreme Court recently rejected
 
 Ibarra’s
 
 ’’farce or sham” standard and enunciated a new standard of constitutionally adequate assistance of counsel.
 

 
 *680
 
 The People, however, challenge the applicability of
 
 Pope
 
 to this case on several grounds. First, they contend, as did the dissenters in
 
 Pope,
 
 23 Cal.3d at pages 430, 431, that the new standard of constitutional adequacy of representation enunciated in
 
 Pope
 
 is mere obiter dictum. The majority in
 
 Pope,
 
 though, expressly rejected this categorization (23 Cal.3d at p. 428, fn. 18).
 

 Secondly, the People assert that the standard of
 
 Pope
 
 should not be applied retroactively. Like the United States Supreme Court, California courts use the following criteria to determine whether a new rule of decisional law in criminal cases should be applied retroactively: (1) the purpose of the new rule, (2) the extent of the reliance by law enforcement authorities on the old rule, and (3) the effect on the administration of justice of retrospective application of the new rule.
 
 (People
 
 v.
 
 Gainer
 
 (1977) 19 Cal.3d 835, 853 [139 Cal.Rptr. 861, 566 P.2d 997].) The factors of reliance and burden on the administration of justice are of significance only when the question of retroactivity is a close one in light of the purpose of the new rule.
 
 (In re Johnson
 
 (1970) 3 Cal.3d 404, 410 [90 Cal.Rptr. 569, 475 P.2d 841].) Decisional rules that vindicate the right of the accused to the assistance of counsel at arraignment, trial and on appeal are given retroactive effect because denial of counsel “ ‘must almost invariably deny a fair trial.’ ”
 
 (In re Johnson, supra,
 
 3 Cal.3d at p. 411, citing
 
 Stovall
 
 v.
 
 Denno
 
 (1967) 388 U.S. 293, 297 [18 L.Ed.2d 1199, 1204, 87 S.Ct. 1967].) Because the purpose of the
 
 Pope
 
 standard is to vindicate the right of a criminal defendant to the assistance of counsel at trial, we hold that it applies to all cases pending on appeal on the day that it was decided (Feb. 22, 1979) including the instant case. (See
 
 People
 
 v.
 
 Gainer, supra,
 
 19 Cal.3d at p. 853;
 
 People
 
 v.
 
 Charles
 
 (1967) 66 Cal.2d 330, 333-337 [57 Cal.Rptr. 745, 425 P.2d 545].)
 
 [4]
 

 Third, the People point out, quite correctly, that
 
 Pope
 
 involved appointed rather than retained defense counsel, as here, and that in
 
 Pope the court
 
 carefully said, in effect,
 
 that it
 
 was not deciding whether the standard of constitutionally adequate representation would differ in the two situations.
 

 
 *681
 
 We believe that the constitutional requirement of equal protection of law mandates that the standard be the same in both situations. (Compare
 
 Douglas
 
 v.
 
 California
 
 (1963) 372 U.S. 353 [9 L.Ed.2d 811, 83 S.Ct. 814].)
 
 Pope
 
 explicitly recognized that the right to competent representation at trial in criminal cases is grounded exclusively in the constitutional right to the assistance of counsel (23 Cal.3d at p. 422) and that every person accused of a criminal offense is entitled to constitutionally adequate legal assistance (23 Cal.3d at p. 424). This being so, the standard for such assistance must be the same whether the defense counsel involved is appointed or retained.
 
 [5]
 
 There can be no notion of invited error with respect to a constitutional right as fundamental as this one is.
 

 We turn to a statement of the appropriate standard as declared in
 
 Pope.
 
 To establish constitutionally inadequate representation at a criminal trial, a defendant must show that his “counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates” and that his “counsel’s acts or omissions resulted in the withdrawal of a potentially meritorious defense.” (23 Cal.3d at p. 425.)
 
 [6]
 

 Once this burden has been met, under
 
 Pope
 
 we are required to determine if the record contains any explanation for the claimed deficiency in representation (23 Cal.3d at p. 425). In this connection we have already set forth the entire explanation of defendant’s counsel at trial. We are therefore in a position to resolve this issue.
 

 Accordingly we turn to the specifics of defendant’s claim of constitutionally inadequate representation at trial in the case before us. Defendant here claims that his trial counsel not only “opened the door” regarding the circumstances surrounding the confidential informant’s purchase of heroin at the apartment in which defendant was arrested, but also failed to make a motion for disclosure of the informant’s identity, which then became essential in proving defendant’s limited defense that the heroin he possessed at the time of his arrest was not held for sale but instead for use by him.
 

 We must put this specific claim of constitutional inadequacy of representation in perspective. As already noted in part, defendant offered
 
 *682
 
 evidence at trial that he had been a particularly heavy user of heroin because of his practice of inhaling it instead of injecting it. He thereby laid the basis for the jury to infer that the heroin found on his person and in the apartment at the time of his arrest was for his personal use only.
 

 Before defense counsel cross-examined Schultz regarding the informant’s purchase of heroin, the prosecution had not presented any evidence regarding that sale. It could not have done so because such evidence was not relevant to the charged offense. It was relevant only to the issue of probable cause to support the search warrant. (See Evid. Code, §§ 210, 350.) Counsel’s cross-examination led to the prosecution’s establishing that Schultz had obtained a search warrant for
 
 defendant
 
 following the informant’s quite recent heroin purchase at the very apartment where defendant was later arrested. Some of this evidence was inadmissible hearsay. (See Evid. Code, § 1200.)
 

 Defense counsel’s cross-examination of Officer Schultz regarding the prior sale of heroin was clearly an unwarranted and apparently fatal tactical error. All that he thereby established in support of his client’s limited defense of possession for use as opposed to possession for sale was that the police could not say who had actually made the prior sale to the informant. But if he was going to nail down his client’s noninvolvement in the prior sale, once he had brought its occurrence before the jury, he had to do this through the testimony of the purchaser, the confidential informant. Yet at no time prior to trial or at trial did he take the necessary first step—that is to move that the identity of the informant be disclosed.
 

 The net effect of this course of conduct by defendant’s trial counsel was tantamount to a withdrawal of his client’s limited defense of possession of heroin for use only. (Cf.
 
 People
 
 v.
 
 Williams
 
 (1971) 22 Cal.App.3d 34, 46-50 [99 Cal.Rptr. 103].) It established a very recent prior sale of heroin at the location of his subsequent arrest with heroin on him in which prior sale his client was, at the very least, inferentially involved. It lent strong support to the inference that defendant possessed the heroin found upon his person and in the apartment at the time of his arrest for purpose of sale, which inference was also supported by the comparatively large amount of heroin then found, the fact that the larger portion thereof was over twice as strong as that in the balloons and the presence of the various items for the manufacture of heroin in marketable form.
 
 [7]
 

 
 *683
 
 Furthermore, the conduct of trial counsel which resulted in the withdrawal of defendant’s potentially meritorious “heroin use” defense was not within the range of reasonable competence because, as we have already indicated, this conduct was unwarranted. Thus, defendant was deprived of the constitutionally adequate assistance of counsel at trial. (23 Cal.3d at pp. 425-426.)
 

 We now consider the effect of the
 
 Pope
 
 error. Generally federal constitutional error (including constitutionally inadequate representation) in the trial of criminal cases requires reversal unless the reviewing court can declare its belief that the error was harmless beyond a reasonable doubt.
 
 (Chapman
 
 v.
 
 California
 
 (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065];
 
 People
 
 v.
 
 Dorsey
 
 (1975) 46 Cal.App.3d 706, 720 [120 Cal.Rptr. 508].) Defendant was convicted of possession of heroin for the purpose of sale. (Former Health & Saf. Code, § 11351, subd. (a).) Counsel’s inadequacy effectively withdrew defendant’s limited defense that he possessed the heroin for his own use and not for the purpose of sale. Defendant does not argue that counsel’s inadequacy resulted in the withdrawal of any other defense. In order to convict defendant of possession of heroin for the purpose of sale, the jury necessarily found that the prosecution had proved the elements of unlawful possession of heroin. (See former Health & Saf. Code, §§ 11351, subd. (a) and 11350, subd. (a).) Here it is clear beyond a reasonable doubt that counsel’s inadequacy did not contribute to the jury’s finding that the elements of possession of heroin were proved by the prosecution. Thus, instead of preventing defendant’s acquittal, counsel’s inadequacy merely shut the door to a verdict of the lesser offense, possession of heroin. (Former Health & Saf. Code, § 11350, subd. (a).) Absent other reversible error, defendant has established only a case for modification of the judgment but not one for reversal. (See
 
 People
 
 v.
 
 Heffington
 
 (1973) 32 Cal.App.3d 1, 15-17 [107 Cal.Rptr. 859].) The People, however, are privileged to try to obtain another conviction of possession of heroin for the purpose of sale. On the other hand, they may decide that they are satisfied with possession of heroin—a decision which we neither suggest nor discourage. Our disposition will preserve these options. (See Pen. Code, §§ 1260, 1262;
 
 People
 
 v.
 
 Heffington, supra; People
 
 v.
 
 Garcia
 
 (1972) 27 Cal.App.3d 639, 647-648 [104 Cal.Rptr. 69]; compare
 
 People
 
 v.
 
 Newman
 
 (1971) 5 Cal.3d 48, 55 [95 Cal.Rptr. 12, 484 P.2d 1356] [disapproved in another respect in
 
 People
 
 v.
 
 Daniels
 
 (1975) 14 Cal.3d 857, 862 (122 Cal.Rptr. 871, 537 P.2d 1232)].)
 
 [8]
 

 
 *684
 
 Disposition
 

 Within 20 days of the filing of this opinion, the People may file a request for modification of the judgment reducing the offense from possession of heroin for the purpose of sale (former Health & Saf. Code, § 11351, subd. (a)) to possession of heroin (former Health & Saf. Code, § 11350, subd. (a).) Such a request shall not affect any then pending application for rehearing. Should such a request be filed, the remittitur will direct said modification, affirm the judgment as so modified and instruct the trial court to resentence defendant after appropriate proceedings under the sentencing statutes. (See
 
 People
 
 v.
 
 Causey
 
 (1964) 230 Cal.App.2d 576, 579 [41 Cal.Rptr. 116];
 
 People
 
 v.
 
 Heffington, supra,
 
 32 Cal.App.3d 1.) Should such a request not be filed, the remittitur will order reversal of the judgment. The habeas corpus relief is otherwise denied.
 

 Allport, J., and Potter, J., concurred.
 

 A petition for a rehearing was denied July 24, 1979, the opinion and judgment were modified to read as printed above, and the following opinion was then rendered:
 

 The People, having timely filed (as authorized by us in our decision herein) a request that the judgment of conviction herein be modified by reducing the offense from possession of heroin for the purpose of sale to possession of heroin, the judgment of conviction is so modified and, as so modified, is affirmed. The trial court is directed to resentence defendant.
 

 Respondent’s petition for a hearing by the Supreme Court was denied September 26, 1979.
 

 [1]
 

 Defendant filed a petition for writ of habeas corpus (2d Crim. No. 34724). Because he seeks relief in his petition based upon the inadequate representation of counsel at the trial that led to the conviction that is the subject of his direct appeal in 2d Crim. No. 33356, the two matters have been consolidated.
 

 [2]
 

 We state the facts in the light most favorable to the People as the prevailing party below.
 
 (People
 
 v.
 
 Caudillo
 
 (1978) 21 Cal.3d 562, 570-571 [146 Cal.Rptr. 859, 580 P.2d 274].)
 

 [3]
 

 The flight instruction reads: “The flight of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding the question of his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine.” (CALJIC No. 2.52 (3d ed. 1970).)
 

 [4]
 

 Furthermore, a new rule of decisional law should be applied to cases pending on appeal if the rule is one that has been foreshadowed by prior decisions
 
 (People
 
 v.
 
 Heredia
 
 (1971) 20 Cal.App.3d 194, 199 [97 Cal.Rptr. 488]) and the majority in
 
 Pope
 
 suggested that prior decisions did, in fact, foreshadow its enunciation of a new standard to measure constitutional inadequacies in defense counsel. For example, it stated: “In several cases, this court has moved away from the ‘farce or sham’ standard,” and “[i]nsofar as it survives, the ‘farce or sham’ standard . . . has been widely criticized. . . .” (23 Cal.3d at pp. 421-422.)
 

 [5]
 

 In
 
 People
 
 v.
 
 Cook
 
 (1975) 13 Cal.3d 663, 671, 672 [119 Cal.Rptr. 500, 532 P.2d 148], our Supreme Court knowingly applied the
 
 Ibarra
 
 standard of constitutionally adequate representation to privately retained counsel.
 

 [6]
 

 If it is clear to a reviewing court that trial counsel intentionally represented his client in an incompetent manner in order to obtain a reversal, no relief need be granted.
 

 [7]
 

 The situation in the case at bench is markedly similar to that in
 
 In re Julius B.
 
 (1977) 68 Cal.App.3d 395, 398-403, 406 [137 Cal.Rptr. 341], where a judgment of conviction of a minor for murder was reversed because of
 
 Ibarra
 
 error. This error consisted of defense counsel eliciting testimony from the investigating officers consisting of inadmissible hearsay extrajudicial accusations by a third person that his client committed the charged offense.
 

 [8]
 

 Defendant also contends that he is entitled to have good time/work time credit applied against his prison term in addition to the number of days of actual presentence
 
 *684
 
 custody specified by the trial court. This view is consistent with several recent appellate court decisions that awarded such credits under either Penal Code section 4019 or 2931. Our Supreme Court, however, granted hearings in these cases on May 30, 1979. (See
 
 People
 
 v.
 
 Sage
 
 (Crim. 20997);
 
 *
 

 People
 
 v.
 
 Brown
 
 (Crim. 20988);
 
 In re Davis
 
 (Crim. 20999).) Thereafter, in
 
 People
 
 v.
 
 Vasquez
 
 (1979)
 
 ante p. 42
 
 [156 Cal.Rptr. 235J)
 
 another
 
 division of this court in the Fourth Appellate District held that the trial court did not err in refusing to award Vasquez good time/work time credit pursuant to Penal Code section 4019. But we will leave this issue open for disposition after our Supreme Court has spoken. Presumably, if such credits are awarded, and regardless of the methodology adopted for their determination, all inmates will receive the benefit thereof administratively.
 

 *
 

 Reporter’s Note: For Supreme Court opinion see 26 Cal.3d 498 [162 Cal.Rptr. 450. 606 P.2d 757],