[Crim. No. 21170. First Dist., Div. One. July 30, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
DEREK RAYMOND MADARIS, Defendant and Appellant.

[Crim. No. 21666. First Dist., Div. One. July 30, 1981.]

In re DEREK RAYMOND MADARIS on Habeas Corpus.

236

COUNSEL

John Murcko, under appointment by the Court of Appeal, for Defendant and Appellant and Petitioner.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Michael I. Mintz, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ELKINGTON, Acting P. J.—We have consolidated defendant Madaris' appeal from a judgment of conviction of violating Penal Code section 12021 (possession of a concealable firearm by one previously convicted of a felony), based upon a jury's verdict, with his concurrent application for a writ of habeas corpus based upon allegations of constitutionally inadequate representation by trial counsel concerning matters outside the appellate record (see *People* v. *Pope* (1979) 23 Cal.3d 412, 426 [152 Cal.Rptr. 732, 590 P.2d 859]).

THE APPEAL FROM THE JUDGMENT

We find no merit, for the reasons we now state, in the appeal.

I. Madaris' first *appellate* contention is that "The defendant was denied his constitutional right to effective aid of counsel in the preparation and trial of his case."

It is argued that: "In this case the appellants' [*sic*] counsel at the trial level was not adequately prepared at trial to properly advise the appellant of his rights concerning the charge under Penal Code 12021(a). It was the lack of full and adequate legal research that prompted the trial counsel to work out a stipulation that in effect elimi-

nated the most crucial element from the charge under Penal Code section 12021(a)." The argument is wholly without support in the appellate record, and thus meritless. (See *In re Hochberg* (1970) 2 Cal.3d 870, 875 [87 Cal.Rptr. 681, 471 P.2d 1].)

It is also pointed out that: "The trial counsel convinced the court that there should be a stipulation by the appellant and the state that appellant admit his prior conviction as a felon ...." By this obvious tactical ploy *outside of the jury's presence*, trial counsel was able to keep from the jury any knowledge that Madaris had previously been convicted of *robbery*, an advantage that is frequently, and we think wisely, sought by able trial counsel. The point is frivolous.

The defense offered by Madaris was that his possession of the concealable firearm of the charge resulted when he wrested it from another in order to prevent immediate violence to yet another person. Pursuant to that defense the trial court instructed the jury that "where there is no predesign or prior possession of a concealable firearm, the temporary possession of a concealable firearm by a person only while acting in the defense of another is not a violation of Penal Code section 12021(a)."

■ No merit is seen in the argument that counsel prejudicially "permitted" Madaris to testify that under the above-noted circumstances he had temporarily and knowingly possessed the concealable firearm. (See *People v. King* (1978) 22 Cal.3d 12, 26-27 [148 Cal.Rptr. 409, 582 P.2d 1000].) The defense was a tactical choice (see *People v. Najera* (1972) 8 Cal.3d 504, 516 [105 Cal.Rptr. 345, 503 P.2d 1353]) and, further, we are of the opinion that counsel for a criminally accused witness is *not* under a duty to "permit" him to testify other than truthfully.

■ Nor is trial counsel reasonably to be faulted for "withdrawing" the instruction on "willfully," as found in CALJIC No. 1.20, stating as relevant that: the term "implies simply a purpose or willingness to commit the act or to make the omission in question. The word does not require in its meaning any intent to violate law, or to injure another, or to acquire any advantage." Competent counsel, we opine, under the circumstances here might reasonably conclude such an instruction more likely to prejudice, than benefit, his client.

"Anyone who seeks on appeal to predicate a reversal of conviction on error must show that it was prejudicial." (*People v. Archerd* (1970) 3 Cal.3d 615, 643 [91 Cal.Rptr. 397, 477 P.2d 421].)

II. Madaris' next appellate contention follows: "The prosecution failed to prove the status of defendant as a felon as set out in section 12021(a) of the California Penal Code."

What Madaris characterizes as the prosecution's *"failure"* was the above mentioned stipulation, compelled by law upon his attorney's motion, "so as to avoid any prejudice which might result from informing the jury that [Madaris] had been convicted of [the crime of robbery]" (*People* v. *Hall* (1980) 28 Cal.3d 143, 156-157 [167 Cal.Rptr. 844, 616 P.2d 826]), proof of which otherwise appears to have been readily available. As noted, the stipulation benefited, rather than prejudiced, Madaris and his case. (See *People* v. *Archerd, supra*, 3 Cal.3d 615, 643.)

III. ■ Another assignment of judicial error is that: "The court erroneously admitted into evidence the fact that defendant had previously been convicted of theft."

Madaris having elected to testify on his own behalf, a *Beagle* (*People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1]) hearing was conducted out of the jury's presence which resulted in the trial court's ruling that he might be impeached by proof of his conviction of a "felony involving theft . . . ." Thus (as noted in part II above) was kept from the jury the inherent violence of Madaris' actual *robbery* conviction. The ruling was in full accord with *Beagle's* authority and strictures; it was not erroneous.

Nor do we find anything in *People* v. *Burdine* (1979) 99 Cal.App.3d 442 [160 Cal.Rptr. 375], holding that a five-year-old conviction, as here, is stale and for that reason, inadmissible.

IV. ■ Madaris' final appellate contention is stated in this manner: "The jury's instructions were improper, confusing, inconsistent and constituted prejudicial error."

We quote from the supportive arguments: "First, as has been previously mentioned, the instructions on 'willfull' were omitted. . . . Second, the court failed to instruct on the element of previous conviction of appellant as a part of section 12021(a) of the Penal Code." (For the above stated reasons (parts I and II above) these arguments lack merit.)

"Third, the court instructed on flight as specified in CALJIC 252 . . . ." (Such an instruction was supported by substantial evidence, and has repeatedly been approved as a correct statement of law. See *People v. Williams* (1980) 101 Cal.App.3d 711, 719 [161 Cal.Rptr. 830]; *People v. Caudillo* (1980) 101 Cal.App.3d 122, 124-125 [161 Cal.Rptr. 293]; *People v. Cooper* (1979) 94 Cal.App.3d 672, 678-679 [156 Cal. Rptr. 646]; *People v. Vasquez* (1979) 94 Cal.App.3d 42, 45 [156 Cal. Rptr. 235].)

■ "Next, the court gave an erroneous instruction on motive. The court stated, 'However, you may consider motive or lack of motive, as a circumstance in this case. Absence [*sic*] of motive may tend to establish guilt. Absence of motive may tend to establish innocence.' . . . Out of this error it can only be inferred that no motive is needed to establish guilt." (From the entire instruction it is manifest that the jury were not misled by the trial court's inadvertent substitution of "absence" for "presence" in the sentence "Absence of motive may tend to establish guilt." And it is settled law that "no motive at all" is needed to establish guilt. (1 Witkin, Cal. Crimes (1963) Elements of Crime, § 54, pp. 59-60.))

■ "Finally, the appellant requested but was denied an instruction regarding expert testimony. . . . This was important because Officer Lindberg testified as to the concealability of the weapon in question . . . . This person gave testimony as an expert as to concealability of the firearm. As such the court should have instructed the jury on that point." ("Expert testimony as to facts may be necessary where the facts from which conclusions are to be drawn are peculiarly within the expert's knowledge and are not a matter of common knowledge as to which an ordinary witness may competently testify." (Witkin, Cal. Evidence (2d ed. 1966) The Opinion Rule, § 407, pp. 365-366.) We are of the opinion that the trial court reasonably concluded that the concealability of a firearm is "a matter of common knowledge as to which an ordinary witness may competently testify.")

THE APPLICATION FOR A WRIT OF HABEAS CORPUS

The application was made on Madaris' behalf by his appellate attorney "under penalty of perjury . . . ." There is a threshold question. It concerns the duty of a reviewing court where a criminal appeal on a trial record is attended by an application for a writ of habeas corpus

founded upon claimed constitutional inadequacy of trial counsel, *as to which no record is available.*

Madaris argues that, having consolidated his appeal with his application for habeas corpus, we, under compulsion of *People* v. *Frierson* (1979) 25 Cal.3d 142 [158 Cal.Rptr. 281, 599 P.2d 587], *must* issue an order to show cause why the writ should not be granted, returnable for hearing and disposition before this, or the superior, court.

.The point, we think, was recently answered by the state's high court. *People* v. *Jackson* (1980) 28 Cal.3d 264, 288-296 [168 Cal.Rptr. 603, 618 P.2d 149], in a closely similar procedural context affirmed a judgment of conviction and summarily denied a petition for writ of habeas corpus founded on alleged and unrecorded constitutional inadequacy of defense counsel. The court found that the petition had failed "to reveal sufficient facts to establish even a prima facie case" for relief (pp. 289-290).

We inquire whether such a prima facie case has here been made.

■ We note initially that the *burden* "of proving a claim of inadequate trial assistance" rests upon the habeas corpus applicant. (*People* v. *Lanphear* (1980) 26 Cal.3d 814, 828 [163 Cal.Rptr. 601, 608 P.2d 689]; *People* v. *Pope, supra*, 23 Cal.3d 412, 425.)

■ A petition for habeas corpus "must be verified by the oath or affirmation of the party making the application." (Pen. Code, § 1474.) Without such a verification the petition, at least ordinarily, will be summarily denied. (*In re Newell* (1923) 64 Cal.App. 103 [220 P. 425].) Verification, under the statute, manifestly requires that all factual matters *relied upon* be stated by their declarant, whomsoever he may be, under oath.

The record upon which Madaris founds his habeas corpus application consists of *unsworn* statements of his trial attorney and a declaration under penalty of perjury of his attorney on this appeal.

The *unsworn* statement of Madaris' *trial* attorney recites, as relevant: "I never called a witness by the name of Mike Garsa. The petitioner gave me his name, address and telephone number. However, I did not interview this witness prior to the trial. I knew that he was a character witness for truthfulness."

The *sworn* declaration of Madaris' *appellate* attorney recites: "1. I interviewed Mike Garsa on July 10, 1980. 2. Mike Garsa owns A.C. Auto Wreckers, 220 Rincon, San Francisco, California. 3. Mike Garsa has known Derek R. Medaris [*sic*] for two to three years beginning in 1977 and up until the present. Derek Maderis [*sic*] was employed by Mike Garsa. 4. Derek was a reliable worker and he always showed the best type of work habits. 5. Derek stayed and took care of the office when Mike Garsa went on vacation. 6. Mike Garsa believes that Derek Maderis is a truthful and honest person. He was the most honest and best person that ever worked for him. 7. Mike Garsa would like to have Derek Maderis work for him again and wants Derek Maderis to be released."

The latter declaration is plainly the equivalent of what will reasonably be called typical courtroom hearsay, i.e., sworn testimony of a witness conveying an out-of-court unsworn statement of another, that is offered to the court "to prove the truth of the matter stated" (see Evid. Code, § 1200), and which, if here produced before the trial jury, would probably have resulted in a different verdict. Offered for any other reason the declaration would have no conceivable evidentiary, or procedural, purpose or validity.

It has long been the rule of California that factual allegations on which a petition for habeas corpus are based must be "in such form that perjury may be assigned upon the allegations if they are false." (*Ex parte Walpole* (1890) 84 Cal. 584 [24 P. 308].) Here the critical allegations were patently not in such form.

Madaris has not met the requirement of *People* v. *Jackson, supra*, 28 Cal.3d 264, that his petition reveal "a prima facie case" for relief.

■ Additionally, we observe high authority that trial counsel's failure to call certain witnesses upon a criminal trial will usually be deemed "trial tactics as to which [reviewing courts] will not ordinarily exercise judicial hindsight." (*People* v. *Beagle, supra*, 6 Cal.3d 441, 458.) The wisdom of such a rule becomes patent in light of the case at bench. Experienced trial judges and attorneys are well aware that testimony of an accused's good reputation for honesty and truthfulness is, as often as not, followed by an onslaught of contrary evidence; here, as we have by now repetitiously pointed out, trial counsel might reasonably have expected evidence of Madaris' theretofore suppressed robbery conviction to be unfolded before the jury. (See Evid. Code, § 786.)

*Pope* tells us that where possible: "[T]he appellate court must look to see if the record contains any explanation for the challenged aspect of representation. If it does, the court must inquire whether the explanation demonstrates that counsel was reasonably competent and acting as a conscientious, diligent advocate." (23 Cal.3d, p. 425.) Here the record, as noted, demonstrates a probable tactical purpose of counsel within the range of reasonable competence; in such situations reviewing courts will not "second-guess" trial counsel. (*People* v. *Frierson, supra,* 25 Cal.3d 142, 158.) It seems unreasonable to allow a concert of trial and appellate attorneys, under circumstances where the prosecution's refutation is ordinarily *impossible*, to impugn an inference reasonably, and properly, drawn from the record.

Moreover, we observe that in an otherwise proper case "violations of the right to counsel may be disregarded as harmless error." (*United States* v. *Morrison* (1981) 449 U.S. 361 [66 L.Ed.2d 564, 568, 101 S.Ct. 665, 668].) Were we, arguendo, to accept as true Madaris' instant contentions, we should be obliged to apply that doctrine. The case against Madaris was strong, and it is reasonably certain that had the testimony of Mike Garsa been offered and allowed, greater harm than benefit would have resulted from the then permissible evidence of Madaris' prior *robbery*.

The judgment from which Madaris has appealed (1 Crim. No. 21170) is affirmed. His application for a writ of habeas corpus (1 Crim. No. 21666) is denied.

Newsom, J., concurred.

**GRODIN, J.**—I concur in the opinion of the court insofar as it affirms the conviction on appeal (1 Crim. No. 21170), and I agree that defendant's petition for writ of habeas corpus (1 Crim. No. 21666) should be denied. I write separately to express somewhat different views as to the latter issue.

The claim of incompetency asserted in the petition—the failure of defendant's trial counsel to interview or to call a potential character witness—is of necessity based upon facts outside the appellate record and is, therefore, appropriately raised through petition for habeas corpus. (*In re Hochberg* (1970) 2 Cal.3d 870 [87 Cal.Rptr. 681, 471 P.2d 1]; *People* v. *Pope* (1979) 23 Cal.3d 412, 426 [152 Cal.Rptr. 732, 590 P.2d 859].) The question presented is whether, taking the facts alleged

as true, the defendant has established a prima facie case for relief. (*In re Lawler* (1979) 23 Cal.3d 190, 194 [150 Cal.Rptr. 833, 588 P.2d 1257].) If so, then an order to show cause should issue, and an evidentiary hearing held if necessary. (*Ibid.*) Such a procedure is expressly contemplated by *People* v. *Pope, supra*, and the possibility that trial and appellate attorneys acted in "concert," whatever the implications of that term, is no bar to relief.

I agree that in this case the petition, read in conjunction with the appellate record, does not establish a prima facie case of incompetency of counsel requiring reversal. I do not base this conclusion upon characterization of the declaration by defendant's appellate counsel as "hearsay," since it is not offered to prove the truth of the matter stated by the witness Garsa, but rather to establish what Garsa would have testified if he had been called as a witness. Rather, I base this conclusion upon the lack of specificity in the petition (we are not told, for example, when defendant advised his trial counsel of Garsa's existence or potential testimony), in the face of an appellate record which suggests both the plausibility of a tactical explanation for not calling Garsa as a witness and the extreme improbability that calling him as a witness would have made a difference in the result.