Filed 6/5/15  P. v. Royal CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E060820 |
| v. | (Super.Ct.No. SWF1301719) |
| ROBERT LEE ROYAL, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Timothy F. Freer and Mark Mandio, Judges.*  Affirmed as modified with directions.

Allison H. Ting, under appointment by the Court of Appeal, for Defendant and Appellant.

---

* Judge Freer presided over the trial and entered the judgment.  Judge Mandio responded to a question from the jury during its deliberations.

1

Kamala D. Harris, Attorney General, Julie L. Garland, Senior Assistant Attorney General, and Eric A. Swenson and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Robert Lee Royal got into an argument with his adult sister and his 16-year-old niece. During the argument, at least according to the victims' statements to the police immediately afterward, he choked his sister; he then hit his niece on the arm with a two-by-four. At trial, the victims tried — understandably but none too convincingly — to minimize his acts.

A jury found defendant guilty on three counts: (1) assault by means of force likely to cause great bodily injury (Pen. Code, § 245, subd. (a)(4)), (2) assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)), and (3) felony child endangerment (Pen. Code, § 273a, subd. (a)). In a bifurcated proceeding, after waiving a jury, defendant admitted two "strike" priors (Pen. Code, §§ 667, subds. (b)-(i), 1170.12) and two prior serious felony conviction enhancements (Pen. Code, § 667, subd. (a)). As a result, he was sentenced to a total of 35 years to life in prison, along with the usual fines and fees.

Defendant now contends:

1. With respect to count 1, the trial court erred by failing to give either a unanimity instruction or an election instruction.

2. For purposes of count 2, there was insufficient evidence that defendant used a deadly weapon.

2

We will reject both contentions. On our own motion, however, we will hold that the trial court erred by staying the sentence on count 1 under Penal Code section 654, which will result in the addition of eight years to defendant's sentence.

I

FACTUAL BACKGROUND

Defendant lived in Lake Elsinore with various family members, including his mother, his sister Sheila T., and his niece, 16-year-old S.R.

A. *911 Calls*.

On May 11, 2013, both Sheila and S.R. made separate 911 calls.

Sheila reported that defendant had hit S.R. S.R. similarly reported that defendant had hit her with a piece of wood. She added that he hit her in the side and then, because she "blocked," on the arms.

B. *Statements to the Police*.

Around 11:00 p.m., Deputy Chad McVay responded to the 911 calls. He took statements from both Sheila and S.R.

Sheila was crying, shaking, and distraught. She said that defendant had come home drunk and gotten into an argument with her. During the argument, he "wrapped [his hands] around her neck and . . . t[ook] her to the ground . . . ." He "squeezed her" to the point where she "saw lights," felt dizzy, and thought she was going to pass out. He let go but started hitting her in the face with both hands.

3

S.R. pulled defendant off of Sheila. They managed to push him out through a door and to lock the door. Several minutes later, however, he "busted [the door] open" and came in. He was carrying a "two-by-four." He raised the two-by-four "above his head and swung a large arc[,] striking [S.R.]'s left forearm."

Sheila had no visible injuries to her face. Deputy McVay testified that she did have "slight swelling around her neck." However, he did not mention this in his report. He also did not mention in his report that Sheila said she had been choked.

S.R. was crying and shaking and seemed scared. She said she saw defendant on top of Sheila, hitting her. She helped to push him into the garage and to lock the door. A few moments later, he broke down the door, came in with a two-by-four, swung it, and hit her on the left forearm.

S.R. had visible "swelling" on her arm. She was treated by paramedics. They thought her arm was broken, but she refused to have x-rays or to go to the hospital.

Deputy McVay found that the kitchen door was damaged and there was a two-by-four nearby. The two-by-four was admitted into evidence.

Deputy McVay testified that he took photos of Sheila, S.R., and the damaged door. He thought he had booked them into evidence, but he had not. He downloaded them to a personal laptop computer but lost them when it broke several weeks later.

C. *Statements to a Prosecution Investigator.*

When a prosecution investigator interviewed Sheila, she denied that defendant had either choked her or hit her in the face.

4

When the same investigator interviewed S.R., she denied that defendant had choked Sheila.

S.R. admitted that, after the incident, members of the family talked about it and "tried to put all of our stories together . . . ." Defendant's mother wanted her not to say anything about the piece of wood.

Sheila similarly admitted that defendant's mother had told both of them to lie to protect defendant.

D.  *Testimony at Trial.*

At trial, Sheila denied that defendant choked her. At one point, defendant did push her. She fell to the ground and hit her knee. She added that he did not push her very hard; she lost her balance only because "there was water on the floor" and she "didn't have on very good shoes . . . ." She denied seeing defendant hit S.R.

S.R. testified that she saw defendant and Sheila "tussling" on the floor. She denied seeing defendant hit or choke Sheila. She grabbed defendant to break it up. She pushed him out into the garage and locked the door.

She denied seeing defendant come back in. Defendant did "tap" or "whack" her on the left wrist with a piece of wood. On a scale from one to ten, the pain was a four. S.R. claimed it hurt only "[f]or a minute." However, she also testified that it still hurt the next morning, although the pain at that point was only a one.

A 14-year-old friend of S.R.'s brother saw part of the confrontation. He testified that he saw defendant hitting S.R. and Sheila and S.R. hitting defendant. Defendant went

5

into the garage. Sheila locked him out. Defendant then broke down the door. He was holding a two-by-four. He "swung" it at S.R. and hit her near the left wrist.

## II

## FAILURE TO GIVE A UNANIMITY INSTRUCTION

## WITH RESPECT TO COUNT 1

Defendant contends that, with respect to count 1 (assault on Sheila by means of force likely to cause great bodily injury), the trial court erred by failing to give either a unanimity instruction or an election instruction.

A.    *Additional Factual and Procedural Background.*

In closing argument, the prosecutor repeatedly stated that count 1 was based on defendant's act of choking or strangling Sheila. For example, he said: "Count 1 is assault with force likely to cause GBI, great bodily injury, and that refers to the defendant strangling Sheila T[.] Just so it's clear, that is what Count 1 is about, the defendant strangling Sheila T[.] . . ."

The prosecutor also indicated, however, that the lesser included offense of simple assault could be based on pushing rather than choking: "[T]hat's the issue, if he really choke[d] her. Because on one hand she says he didn't choke me, but that night she said he did. . . . But that's what you are going to have to decide[,] did he commit the assault. Because either he pushed her — in which case he's guilty of simple assault — or he actually choked her in which case he's guilty as charged of assault with force likely."

During deliberations, the jury submitted the following question: "Need clarification on Count 1 — does the bodily injury only relate to the chocking [*sic*] or any action taken by the defendant such as pushing, hitting[?]"

With the consent of both counsel, the trial court[1] instructed the jury:

"For you to find the defendant guilty of the charge alleged in Count 1, you may only consider the evidence that is the defendant choked, strangled, or attempted to do either to the alleged victim. However, for you to find the defendant guilty of the lesser included offense to Count 1, you may consider any evidence presented at trial."

It then started to give the general unanimity instruction, CALCRIM No. 3500, as follows:

"The defendant is charged in Count 1 with assault with force likely to cause great bodily injury . . . . The People have presented evidence of more than one act to prove the defendant committed [this] offense. You must be — to find defendant guilty — unless you all agree that the People proved that the defendant committed at least one of these acts and all of you agree on which act he committed —"

At that point, however, it stopped, saying, "I just realized, this . . . applies [to] the lesser as well."

It then told the jury, "[W]e're going to break [for lunch] at this time," adding that it might modify the instruction after lunch.

---

[1] A different judge was filling in for the trial judge during deliberations.

Meanwhile, the trial court discussed the state of the evidence with both counsel. Defense counsel asked the trial court to give a unanimity instruction with respect to the lesser, but not with respect to the greater. The trial court, however, opined that it should not give a unanimity instruction at all, because "there is one assault, one continuous course of conduct."

The trial court then ruled, "I am going to tell them to disregard th[e previous] answer, and I am going to give them a new answer." It announced its intent to instruct that: "You may consider any evidence admitted at trial in determining whether the offense in Count 1 was committed."

Defense counsel objected, arguing that the trial court's previous response had been correct. The prosecutor agreed. The trial court, however, adhered to its views.

Thus, it instructed: "I am going [to] order my answer to your question . . . stricken. . . . And I'm going to order you not to consider my answer. And I'm also going to order you not to consider the instruction I read, 3500."

In lieu of its previous instructions, it then instructed: "You may consider any evidence admitted at trial in determining whether the defendant committed the offense alleged in Count 1, or the lesser included offense to Count 1."

B.    *Analysis.*

"In a criminal case, . . . the jury must agree unanimously the defendant is guilty of a *specific* crime. [Citation.] Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes

8

or the court must require the jury to agree on the same criminal act.  [Citations.]"  (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.)  "On the other hand, where the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the basis or, as the cases often put it, the 'theory' whereby the defendant is guilty.  [Citation.]"  (*Ibid.*)

Here, the evidence showed that defendant pushed Sheila, hit her in the face (though not hard enough to cause any visible injuries), and/or choked her.  Of these, only the choking could possibly constitute assault by means of force likely to cause great bodily injury.  (See *People v. Covino* (1980) 100 Cal.App.3d 660, 664-665, 667-668 [choking can constitute force likely to cause great bodily injury].)  We recognize that "the crime defined may be committed without infliction of *any* physical injury, and even though no blow is actually struck.  [Citation.]"  (*People v. Wells* (1971) 14 Cal.App.3d 348, 358.)  Even so, there is no evidence here that the pushing or the blows to the face were *likely* to cause *great* bodily injury.  Thus, if only for this reason, the evidence showed only one discrete instance of the greater offense of aggravated assault.

More generally, however, even with respect to the lesser offense of simple assault, the evidence showed only one discrete instance of the offense.  In *People v. Oppenheimer* (1909) 156 Cal. 733, the defendant was charged with assault with a deadly weapon.  The evidence showed that first, he struck the victim with a sash weight; then, he grabbed a knife and cut the victim with it.  (*Id.* at pp. 736-737.)  On appeal, he argued the

9

prosecution had to elect between prosecuting him for assault with the weight and assault with the knife. The Supreme Court rejected this argument: "We think it is manifest that there was but a single assault shown by this evidence. . . . The mere fact that two weapons are used does not necessarily show two assaults. If one unlawfully assails another with his two hands, first striking at him with one hand and immediately thereafter with the other, no one would say that there were two offenses. The offense would be the one unlawful attempt, coupled with a present ability, to commit a violent injury upon the other's person, and each effort made in what constituted only the same attempt to accomplish this result would constitute only a single element of that attempt. . . . The evidence . . . in this case tended to show one continuous transaction, one assault in which two weapons were used." (*Id*. at p. 740.)

We therefore conclude that defendant was not entitled to a unanimity instruction with respect to the greater *or* with respect to the lesser offense.

Defendant's underlying concern seems to be that the trial court effectively misinstructed the jury *with regard to great bodily injury*. It must be remembered that the jury had only just asked, "[D]oes the *bodily injury* only relate to the chocking [*sic*] or any action taken by the defendant such as pushing, hitting[?]" (Italics added.) The trial court then responded, "You may consider *any evidence admitted at trial* in determining whether the defendant committed the offense alleged in Count 1 . . . ." (Italics added.) Arguably, then, the trial court's response implied that the jury could find that the pushing or the hitting alone constituted force likely to cause great bodily injury.

10

We hasten to add that defendant has not expressly raised this particular argument, and thus he has forfeited it.  More fundamentally, however, we do not believe that this would be a reasonable interpretation of the jury instructions.  "'When an appellate court addresses a claim of jury misinstruction, it must assess the instructions as a whole, viewing the challenged instruction in context with other instructions, in order to determine if there was a reasonable likelihood the jury applied the challenged instruction in an impermissible manner.' [Citation.]" (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1217.)

Here, the jury was generally instructed to "consider the[ instructions] together." (CALCRIM No. 200.)  It was also instructed that "Some of these instructions may not apply . . . .  Do not assume just because I give a particular instruction that [I am] suggesting anything about the facts.  After you have decided what the facts are, follow the instructions that do apply to the facts as you find them." (*Ibid*.)

Specifically regarding count 1, it was instructed that assault by means of force likely to cause great bodily injury required, among other things, that "the force used was likely to produce great bodily . . . injury . . . ." (CALCRIM No. 875.)  "Great bodily injury" was defined as "significant or substantial physical injury.  It is an injury that [is] greater than minor or moderate harm." (*Ibid*.)  The jury was instructed that, on count 1, it could find defendant guilty of the lesser offense of simple assault (CALCRIM Nos. 915, 3517), the elements of which did not include great bodily injury. (CALCRIM No. 915.)

Consistent with these instructions, the prosecutor told the jury that, if it found that defendant choked Sheila, it should find him guilty of assault by means of force likely to cause great bodily injury, but if it found that he merely pushed her, it should find him guilty of simple assault. Defense counsel argued similarly that defendant was guilty only of the lesser included offense of simple assault because Sheila's only injury was a scratch on the knee and her statements that defendant choked her were not credible.

There is no reasonable likelihood that the jury believed that the trial court's response to its question abrogated all of these instructions and arguments. Rather, presumably it believed that the response meant exactly what it said — that the jury could "*consider* any evidence admitted at trial in determining whether the defendant committed the offense alleged in Count 1, or the lesser included offense to Count 1." (Italics added.) That is not the same as saying it could find great bodily injury based on "any evidence admitted at trial" (much of which had nothing whatsoever to do with this issue). As the People note, the trial court's response "mirrored" CALCRIM No. 220, which instructed the jury to "consider all of the evidence that was received through the entire trial."

We therefore conclude that the trial court did not err by failing to give a unanimity instruction or an election instruction. Moreover, while defendant has not argued that the trial court's response to the jury was erroneous, we conclude that it was not.

12

## III

## THE SUFFICIENCY OF THE EVIDENCE WITH RESPECT TO COUNT 2

## THAT DEFENDANT USED A DEADLY WEAPON

Defendant contends that, for purposes of count 2 (assault with a deadly weapon on S.R.), there was insufficient evidence that the two-by-four was a deadly weapon.

"'"'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence — that is, evidence that is reasonable, credible, and of solid value — from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.] We determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.] In so doing, a reviewing court "presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." [Citation.]' [Citation.]" (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1104.)

"'Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' [Citation.] Unless it describes facts or events that are physically impossible or inherently improbable, the testimony of a single witness is sufficient to support a conviction. [Citation.]" (*People v. Elliott* (2012) 53 Cal.4th 535, 585.)

"As used in section 245, subdivision (a)(1), a 'deadly weapon' is 'any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury.' [Citation.] Some few objects, such as dirks and blackjacks, have been held to be deadly weapons as a matter of law; the ordinary use for which they are designed establishes their character as such. [Citation.] Other objects, while not deadly per se, may be used, under certain circumstances, in a manner likely to produce death or great bodily injury. In determining whether an object not inherently deadly or dangerous is used as such, the trier of fact may consider the nature of the object, the manner in which it is used, and all other facts relevant to the issue. [Citations.]" (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028-1029.)

"One may commit an assault without making actual physical contact with the person of the victim; because the statute focuses on *use* of a deadly weapon or instrument . . . , whether the victim in fact suffers any harm is immaterial. [Citation.]" (*People v. Aguilar*, *supra*, 16 Cal.4th at p. 1028.)

Here, there was evidence that defendant raised a two-by-four above his head and swung it in "a large arc," striking S.R. on the left forearm near the wrist. A two-by-four is approximately 2 by 4 inches when sawn and approximately 1 5⁄8 by 3 5⁄8 inches when dressed. (<http://www.merriam-webster.com/dictionary/two-by-four>, as of May 19, 2015.) The treating paramedics thought S.R.'s arm was broken. Moreover, defendant was drunk and presumably unable to aim well. It is reasonably inferable that, if he had been off by only a few inches, he could have broken a hand bone or a wrist bone. If he

14

had hit S.R. in the head, he could have caused a concussion or a skull fracture. In *People v. Cook* (1940) 15 Cal.2d 507, the victim was killed by a single blow in the back of the head with a two-by-four. (*Id*. at p. 516.) The Supreme Court noted that, under the circumstances, the two-by-four constituted a deadly weapon. (*Id*. at pp. 516-517.)

At trial, S.R. tried to play down her own injury, but it was apparent that she was trying to protect her uncle. Thus, for example, the jury was not required to believe her testimony that the pain from the blow was only a four out of ten.

Finally, defendant argues that a jury should not be allowed to find that a two-by-four constitutes a deadly weapon without expert testimony. He cites no case actually holding that expert testimony is required. The weight and solidity of a two-by-four, and the amount of strength that can be exerted by a man wielding such a weapon, are matters within common knowledge. The two-by-four itself was in evidence. Thus, expert testimony was not required. (See *People v. Madaris* (1981) 122 Cal.App.3d 234, 240, disapproved on unrelated grounds in *People v. Barrick* (1982) 33 Cal.3d 115, 127.)

In sum, we conclude that there was sufficient evidence that the two-by-four constituted a deadly weapon under the circumstances of this case.

IV

THE STAY OF THE SENTENCE ON COUNT 1 UNDER SECTION 654

In our review of the record, we have identified one sentencing error. Even though the People have not raised it, we address it because it resulted in an unauthorized sentence. (*People v. Scott* (1994) 9 Cal.4th 331, 354 & fn. 17.)

15

On count 2 (assault on S.R. with a deadly weapon), which the trial court designated as the principal term, it imposed a sentence of 25 years to life. On count 1 (assault on Sheila by means of force likely to cause great bodily injury), it imposed a sentence of eight years (double the upper term). On count 3 (child endangerment as to S.R.), it imposed a sentence of twelve years (double the upper term). However, it stayed the sentences on both count 1 and count 3, purportedly under Penal Code section 654 (section 654).

Section 654, however, did not apply to count 1. Ordinarily, Section 654 prohibits multiple punishment for two offenses if they were both committed incident to a single intent and objective. (See generally *People v. Capistrano* (2014) 59 Cal.4th 830, 885-886.) However, there is a "multiple victim exception" to section 654. Under this exception, "'the limitations of section 654 do not apply to crimes of violence against multiple victims.' [Citation.]" (*People v. Oates* (2004) 32 Cal.4th 1048, 1063.) Count 1 was a crime of violence against Sheila; count 2 was a crime of violence against S.R., a distinct victim. Accordingly, the trial court erred by staying the sentence on count 1.

We will modify the judgment by dissolving the stay of the sentence on count 1. Because the original sentence was unauthorized *ab initio*, increasing the sentence does not violate due process or double jeopardy. (*People v. Serrato* (1973) 9 Cal.3d 753, 764-765, overruled on unrelated grounds in *People v. Fosselman* (1983) 33 Cal.3d 572, 583, fn. 1; *People v. Woods* (2010) 191 Cal.App.4th 269, 273; *People v. Solorzano* (2007) 153 Cal.App.4th 1026, 1040.)

16

V

DISPOSITION

The judgment is modified by dissolving the stay of the eight-year sentence on count 1.  This makes the total sentence 43 years to life in prison.  The judgment as thus modified is affirmed.

The clerk of the superior court is directed to prepare a new sentencing minute order and a new abstract of judgment and to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

HOLLENHORST
J.

CODRINGTON
J.

17